*State of Maryland v. Steven Anthony Thomas*, No. 15, September Term, 2023. Opinion by Gould, J.

**COURTS' REVISORY POWER OVER JUDGMENTS – RULE 4-345(e)**

The Supreme Court of Maryland found that the plain language of Rule 4-345(e)(1) is unambiguous: It grants the circuit court revisory power over a sentence and imposes a strict temporal limit on the circuit court's ability to exercise such power. In applying Rule 4-345(e)(1), a circuit court is prohibited from revising a sentence more than five years after the imposition of the sentence.

**COURTS' REVISORY POWER OVER JUDGMENTS – RULE 4-345(e)**

The Supreme Court of Maryland determined that *Schlick v. State*, 238 Md. App. 681 (2018), was incorrectly decided and overruled it. The Supreme Court held that a sentencing court does not have fundamental jurisdiction over a timely-filed Rule 4-345(e) motion beyond the five-year period provided under the rule.

**COURTS' REVISORY POWER OVER JUDGMENTS – RULE 4-345(e)**

The Supreme Court of Maryland held that if a circuit court defers a motion to reduce a sentence under Rule 4-345(e) for the full five-year period of the rule, the result is the same as if the court had expressly denied the motion at any time within the five-year period. The rule does not require the court to convert a deferral into a formal denial at any point along the five-year timeline.

Circuit Court for Charles County
Case No.: 08-K-02-000568
Argued: February 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2023

_____

STATE OF MARYLAND

v.

STEVEN ANTHONY THOMAS

_____

Fader, C.J.,
Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,


JJ.

_____

Opinion by Gould, J.
Biran, J., concurs.
Hotten and Eaves, JJ., concur and dissent.
Watts, J., dissents.

_____

Filed: August 29, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Maryland Constitution, Article IV, § 3A, she also participated in the decision and adoption of this opinion.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

At common law, the circuit court's power to revise a sentence expired at the end of the term in which the sentence was imposed. *State v. Schlick* (*Schlick II*), 465 Md. 566, 574 (2019). The harshness of this common-law rule was ameliorated in 1951, when this Court adopted the predecessor to today's Rule 4-345(e). *See id.* at 574 (citing Part 4, Rule 10(c) of the Maryland General Rules of Practice and Procedure (1951)); *Johnson v. State*, 274 Md. 29, 40 (1975). Since then, this rule has been substantively amended four times to expand or contract the circuit court's authority to modify a sentence. Today, Rule 4-345(e) authorizes the circuit court to modify a sentence upon a motion that is filed within 90 days after the sentence was imposed. But the rule also imposes an expiration date for the court's authority: A circuit court "may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant[.]" Md. Rule 4-345(e)(1).

Here, during the five-year period after Petitioner Steven Anthony Thomas's sentence was imposed, the court neither formally denied nor granted his timely motion to reduce his sentence, notwithstanding his multiple requests for a hearing. The court did, however, consider the motion during that period. After the five-year period expired, the circuit court held a hearing and concluded that it lacked the authority to revise the sentence. Relying on *Schlick v. State* (*Schlick I*), 238 Md. App. 681 (2018), the Appellate Court of Maryland reversed, holding that the circuit court retained fundamental jurisdiction to decide the motion even though the five-year period had expired.

We disagree with the Appellate Court and reverse. In doing so, we overrule *Schlick I.*

# I

## A

In 2002, Mr. Thomas was indicted in the Circuit Court for Charles County for three alleged hotel robberies that occurred over two days. Mr. Thomas pleaded guilty to two counts of armed robbery and one count of second-degree burglary. His plea agreement called for a within-guidelines sentence and required the State to nolle prosequi the remaining charges.

At that time, Mr. Thomas had already been sentenced to 15 years of incarceration in an unrelated case. On May 15, 2003, the court sentenced him to 20 years of incarceration for the first armed robbery count, consecutive to the sentence in the unrelated case. For the second armed robbery count, the court sentenced him to 20 years of incarceration, consecutive to the sentence for the first armed robbery count. For the second-degree burglary count, the court sentenced him to 15 years of incarceration, concurrent with the sentence for the second armed robbery count. All told, the sentences in this case aggregated to 40 years of incarceration.

## B

Mr. Thomas petitioned for postconviction relief in 2013. On December 3, 2014, based on an agreement between Mr. Thomas and the State, the circuit court reduced Mr. Thomas's sentence on the first armed robbery count to 12½ years, but left the other sentences intact. That resentencing triggered anew Mr. Thomas's right under Rule 4-345(e) to move for a modification of his sentence. *Greco v. State*, 347 Md. 423, 431-33 (1997). The new five-year period expired on December 3, 2019.

In early 2015, while represented by counsel, Mr. Thomas timely moved to modify his sentence under Rule 4-345(e). Among other things, he emphasized his remorse, good behavior as an inmate, participation in individual and group therapy, and participation in vocational programs and workshops. Mr. Thomas concluded his motion with a request for a hearing to present additional supportive information. About four months later, the court (Bragunier, J.) entered an order stating that "[u]pon consideration of" Mr. Thomas's motion, the motion would "be HELD IN ABEYANCE."

On September 7, 2017, Mr. Thomas's counsel supplemented his motion to "inform the court of his additional progress *and* [to] respectfully request[] that a hearing now be scheduled on" the motion. The supplement acknowledged that the court had entered an order holding his initial motion in abeyance. This time, 22 days later, the court (Greer, J.), entered "NOTED. NO ACTION" on the first page of the supplemental motion.

One year later, on September 21, 2018, Mr. Thomas's counsel again supplemented his motion and requested a hearing. The supplement elaborated on Mr. Thomas's progress and alerted the court to the "5 year time limit for which the court has jurisdiction to take action," which was then just over one year away. The supplement acknowledged that the court held Mr. Thomas's initial motion in abeyance and that it took no action on his September 2017 supplement. On October 18, 2018, the court (Greer, J.) entered "NOTED. NO ACTION" on the first page of the motion. Five days later, the State opposed Mr. Thomas's motion.

One year later, on August 9, 2019, Mr. Thomas's counsel again supplemented his motion and requested a hearing. The supplement again alerted the court to the approaching

3

deadline of "December [3], 2019," when the court would lose jurisdiction under Rule 4-345(e). The supplement further acknowledged that Mr. Thomas's initial motion was held in abeyance, that the court took no action on his initial supplement, and that Mr. Thomas had filed a second supplemental motion. On December 6, just days after the five-year period ended, the court (Greer, J.) entered "NOTED. NO ACTION" on the first page of the motion.

On January 8, 2021, Mr. Thomas, this time acting pro se, again supplemented his motion and requested a hearing. On January 26, 2021, the court (Greer, J.) entered "SET FOR HEARING" on the first page of the motion. The State opposed the motion, arguing that the court no longer had authority to rule on the motion under Rule 4-345(e), as the five-year deadline had passed.

A hearing was held on June 16, 2021. Mr. Thomas was represented by counsel. The court heard argument on whether the court had the authority to reduce his sentence after the expiration of the five-year period under Rule 4-345(e). The court concluded that it had no such authority and denied the motion.

C

Mr. Thomas appealed. In an unreported opinion, the Appellate Court of Maryland reversed and remanded the case "so that the court, in the exercise of its discretion, can decide whether to deny [Mr. Thomas's] motion without a hearing, or to hold a hearing and then to decide whether to deny or to grant" his motion. *Thomas v. State*, No. 657, Sept. Term 2021, 2023 WL 3300896, at *7 (Md. App. Ct. May 8, 2023). In doing so, the court

4

applied *Schlick I*, which held that the circuit court retained fundamental jurisdiction over a timely-filed Rule 4-345(e) motion after the expiration of the five-year period. *Id.* at *3.

The State petitioned for a writ of certiorari, and Mr. Thomas cross-petitioned. We granted both petitions. *State v. Thomas*, 486 Md. 95 (2023). The State and Mr. Thomas each present one question, both of which we have rephrased:

> The State's Question Presented: May the circuit court decide the merits of a Maryland Rule 4-345(e) motion for modification of a sentence more than five years after the sentence was imposed?

> Mr. Thomas's Question Presented: When a defendant timely moves for a sentence modification under Rule 4-345(e) and requests a hearing on the motion, must the trial court manifest an exercise of its discretion by either denying the motion without a hearing or holding a hearing to determine whether to grant the motion?

> We answer both questions in the negative.

## II

## A

These two questions require this Court to construe the text of Rule 4-345(e) and examine the common law constraints on the circuit court's revisory power over its judgments. These are legal issues that we review without deference. *Schlick II*, 465 Md. at 573; *Davis v. Slater*, 383 Md. 599, 604 (2004).

## B

> Subsection (e)(1) of Maryland Rule 4-345 provides:

> Upon a motion filed within 90 days after imposition of a sentence (A) in the District Court, if an appeal has not been perfected or has been dismissed, and (B) in a circuit court, whether or not an appeal has been filed, the court has revisory power over the sentence except that it may not revise the sentence

5

after the expiration of five years from the date the sentence originally was imposed on the defendant and it may not increase the sentence.

The State argues that subsection (e)(1)(B) means what it says: The circuit court "may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant[.]" The State insists that the phrase "may not" imposes a mandatory restriction on the court's power to modify a sentence.

As Mr. Thomas sees it, the State's interpretation adheres to the rule's plain language only "on a superficial level and produces an unreasonable outcome—one that is inconsistent with the legislative scheme." He argues that since Rule 4-345(e)(1) grants the circuit court discretion to modify a sentence within the five-year period, a strict reading of its text would "require trial courts to exercise their discretion on timely motions for sentence modification within the five years where a hearing has been requested on the motion." He contends that, his best efforts notwithstanding, the court let the five-year period lapse without considering his motion; that is, the court failed to exercise discretion. So, according to Mr. Thomas, "[t]o interpret Rule 4-345(e) correctly, and leniently in the defendant's favor, is to hold that the rule permits the court to exercise discretion after the five years elapse."

The principles that guide our interpretation of statutes also apply to our construction of the Maryland Rules. We first apply the ordinary meaning of the words used in the rule's text. *Admin. Off. of the Cts. v. Abell Found.*, 480 Md. 63, 83 (2022). We do so "in the context of the rule as a whole and the larger set of rules of which that rule is part." *Id.* If the text is not ambiguous, we may stop our analysis there and simply apply its ordinary

6

meaning. *Duckett v. Riley*, 428 Md. 471, 476-77 (2012) (quoting *Davis*, 383 Md. at 604-05). If the rule is ambiguous in either language or application, we inform our understanding by examining the rule's history and the ramifications of competing interpretations. *Twigg v. State*, 447 Md. 1, 24 (2016).

The plain language in subsection (e)(1) is unambiguous. In one sentence, the rule both grants the circuit court revisory power over a sentence and imposes a strict temporal limit on its ability to exercise such power. Yet, under Mr. Thomas's interpretation, a circuit court *may* revise a sentence after the five-year period, even though subsection (e)(1) expressly states that the court "may not" do so. That is, the circuit court could conceivably err by *not* doing precisely what the rule expressly *prohibits* it from doing.

We reject such an interpretation. For interpreting its statutes, the General Assembly defines "may not" as having "a mandatory negative effect and establish[ing] a prohibition." MD. CODE ANN., GEN. PROV. ("GP") § 1-203 (2014, 2019 Repl. Vol.). We hold that in interpreting Rule 4-345(e)(1), "may not" has that same meaning, and therefore, under subsection (e)(1), the court is prohibited from revising a sentence more than five years after its imposition.

C

The Appellate Court applied *Schlick I* to hold that, notwithstanding the explicit language of Rule 4-345(e)(1), the court retained fundamental jurisdiction over Mr. Thomas's motion after the five-year period expired. The State argues that *Schlick I* was incorrectly decided and urges us to overrule it. In contrast, Mr. Thomas argues that *Schlick I* acknowledged the "practicalities and equities implicated by the five-year deadline" and

7

correctly determined that the circuit court retained fundamental jurisdiction over the Rule 4-345(e) motion after the five-year period expired. Thus, Mr. Thomas contends that the Appellate Court correctly concluded that the circuit court had the discretion to decide his motion. Before we address these points, we will set the context with a brief discussion of *Schlick I* and *Schlick II*.

1

Schlick was sentenced for a narcotics offense in 2005. *Schlick I*, 238 Md. App. at 684. The circuit court sentenced him to 16 years in prison, suspended all but 18 months, and imposed a five-year term of probation on his release. *Id.* Soon after his release, Schlick was charged with another crime, which triggered a violation of probation proceeding. *Id.* On September 15, 2008, after the hearing on the violation, the court revoked Schlick's probation and reimposed the suspended portion of his 2005 sentence. *Id.* Schlick then had 90 days under Rule 4-345(e) to move to modify his sentence. *Id.* Had he done so, the court would have had until September 16, 2013, to modify his sentence.[1] *Id.* at 686. But his counsel failed to file the motion, notwithstanding Schlick's request. *Id.* at 685.

In 2012, Schlick petitioned for postconviction relief, claiming a violation of his Sixth Amendment right to effective assistance of counsel, based on his counsel's failure to move to modify his sentence. *Id.* at 684. The court granted the petition on March 20, 2013, and permitted him to file a belated motion within 90 days. *Id.* at 685. That left roughly six months before September 16, 2013.

---

[1] September 15, 2013, landed on a Sunday; thus, the five-year period ended on September 16, 2013. *See* MD. RULE 1-203.

8

Schlick moved to modify the sentence within the newly granted 90-day window, but the motion was not heard until early 2017. *Id.* at 686-87. Because the five-year period had expired years earlier on September 16, 2013, the circuit court concluded that it no longer had revisory power under Rule 4-345(e) and dismissed the motion without considering its merits. *Id.*

The Appellate Court reversed. *Id.* at 693-94. Key to the court's decision was that Schlick had been granted leave to file a belated motion to modify as a remedy under the Uniform Postconviction Procedure Act, MD. CODE ANN., CRIM. PROC. §§ 7-101 to -301 (2001, 2018 Repl. Vol.). The court observed the potential tension between the postconviction statute, which allows a defendant ten years after sentencing to seek relief, and Rule 4-345(e), which permits the court to revise a sentence within five years post-sentencing. *Schlick I*, 238 Md. App. at 691-92.

The court avoided a collision between the "enactments of the judicial and legislative branches[]" by holding that "the trial court retained fundamental jurisdiction to rule" on the motion after the five-year period expired. *Id.* at 690-91. The court relied, in part, on the "inherent power of the court," noting that "[a]t common law, Maryland trial courts possessed the inherent authority to modify judgments in both criminal and civil cases." *Id.* at 690. The court explained that "[e]xercising the court's inherent authority is not a path to circumnavigate procedural rules regarding sentence modification. Rather, it is a means to orderly administer those rules." *Id.* at 691. Thus, "[b]ecause the court had fundamental jurisdiction and discretion, which it did not exercise," the Appellate Court remanded the case to the circuit court to "consider whether to entertain" the motion to modify and to

9

"consider the merits of the motion." *Id.* at 694. We granted the State's subsequent petition for a writ of certiorari. *State v. Schlick*, 462 Md. 261 (2019).

2

This Court affirmed on other grounds. We reasoned that "[a]s a post-trial remedy, a defendant is entitled to the relief that is needed to put the defendant in the position that he or she would have enjoyed but for counsel's ineffectiveness." *Schlick II*, 465 Md. at 575 (citing *Williams v. State*, 326 Md. 367, 382-83 (1992)). Thus, when an attorney fails to timely file a motion for sentence modification, the remedy is "permission to file a belated motion for reconsideration of sentence." *Id.* at 576 (quoting *State v. Flansburg*, 345 Md. 694, 705 (1997)).

Schlick's sentence had been reimposed on September 15, 2008, following his probation violation. *Id.* at 583. Had Schlick's counsel timely moved to modify, the five-year period under Rule 4-345 would have started that day and ended on September 16, 2013. *Id.* at 584-85. As a remedy for his counsel's failure to file the motion, the postconviction court entered an order on March 20, 2013, giving Schlick 90 days to move to modify his sentence. *Id.* But standing alone, this new 90-day period did not fully restore Schlick to the position he would have enjoyed had his counsel followed his direction to timely file a motion. We reasoned that "if Mr. Schlick had received effective assistance of counsel, he would have been entitled to the benefit of the circuit court's revisory power over his sentence for five years from the date that the court revoked his probation and reimposed his sentence." *Id.* at 585. So,

10

to meaningfully restore Mr. Schlick's rights under the Rule, not only must Mr. Schlick be permitted to file a belated motion within 90 days of the postconviction court's order, but it follows that implicit in the postconviction court's grant of relief was the ability of the circuit court to exercise its revisory power over Mr. Schlick's motion for five years from the date of the postconviction court's order.

*Id.*

In other words, as a remedy under the postconviction statute, we reset the clock under Rule 4-345(e) back to the date of the postconviction order. This clock reset applied to both the 90-day period for filing the motion *and* the five-year period in which the court had the power to revise the sentence. Because the circuit court dismissed Schlick's petition within the five-year period when measured from the reset start date, we declined to "decide whether, as the [Appellate Court] concluded, the circuit court retains indefinite fundamental jurisdiction to modify a sentence outside of the five-year period" under Rule 4-345(e). *Id.* at 586 n.7.[2]

---

[2] Mr. Thomas views *Schlick II* and *Franklin v. State*, 470 Md. 154 (2020), as cases in which this Court "interpreted the rule to allow courts to exercise discretion outside the five-year period." Relying on *Schlick II*, Justice Watts' dissent makes the same point in arguing that Rule 4-345(e) is not jurisdictional. Dissenting Op. of Watts, J. at 2. Similarly, Justice Biran makes the same point in his concurring opinion, stating that *Schlick II* "acknowledged our recent view that the common law as it applies in Maryland provided courts with jurisdiction over their judgments, and that Rule 4-345(e) did not do any jurisdictional work." Concurring Op. of Biran, J. at 21. We disagree.

*First*, we expressly stated in *Schlick II* that we were "not expand[ing] or disregard[ing] the time frames set forth in Rule 4-345(e)[,]" and that "[t]herefore, whether the Rule is properly classified as 'jurisdictional' or 'claim processing' is immaterial to our disposition of Mr. Schlick's case." 465 Md. at 578 n.4. And we expressly declined to decide whether the circuit court retained fundamental jurisdiction over sentences after the five-year period under Rule 4-345(e) expired. *Id.* at 579 n.5. Given those express disclaimers,

11

we disagree that the Court, in *Schlick II*, implicitly determined that the five-year period under Rule 4-345(e) was not jurisdictional.

*Second*, as noted above, the source of the Court's authority in *Schlick II* to reset the clock under Rule 4-345(e) came from the Uniform Postconviction Procedure Act, which, we have held, requires the court to provide a remedy for the violation of a defendant's Sixth Amendment right to effective assistance of counsel. *Schlick II*, 465 Md. at 575. This type of remedy was nothing new: Before *Rosales v. State*, 463 Md. 552 (2019), when this Court was still operating under the incorrect belief that the 30-day deadline under Rule 8-202(a) was jurisdictional, defendants were given the right to a belated appeal as a remedy under the postconviction statute for defense counsel's failure to protect a defendant's appellate rights. *See, e.g.*, *Wilson v. State*, 284 Md. 664, 676 (1979) ("In light of the legislative scheme apparent in the Uniform Post Conviction Procedure Act, we believe that it contemplates that an accused be granted a belated appeal as a remedy to obtain full appellate review of his allegations of error, constitutional in scope, and neither finally litigated nor waived, when he has been denied his entitled appellate review of his claims due to improper action of his appellate counsel."). And, when the 30-day deadline was imposed by statute and therefore was, in fact, jurisdictional, *see Rosales*, 463 Md. at 564, this Court entertained an untimely appeal where the delay was caused by the warden's failure to timely forward the defendant's appeal. *Coates v. State*, 180 Md. 502, 504 (1942).

*Franklin* likewise involved a claim for ineffective counsel based on defense counsel's failure to request a hearing within the five-year period. Although we found that, under the specific circumstances of the case, counsel's performance was not deficient under *Strickland v. Washington*, 466 U.S. 668 (1984), we upheld a "bright line rule regarding the five-year period[]" under Rule 4-345(e): "An attorney must ensure that his or her client knows there is a five-year period for consideration of a motion for modification of a sentence." *Franklin*, 470 Md. at 184. That bright line rule would be unnecessary if, as Mr. Thomas argues, Rule 4-345(e) allows the sentencing court to exercise discretion after the five-year period expires.

Justice Biran refers to the administrative orders tolling or suspending deadlines that were issued in response to the COVID-19 pandemic and suggests that our analysis "casts doubt on the validity of any sentence modifications that were granted during the COVID-19 emergency *after* the applicable five-year period expired, but *within* the extended period provided by this Court's administrative orders." Concurring Op. of Biran, J. at 21. We don't see why. The administrative orders to which Justice Biran refers were issued pursuant to Maryland Rule 16-1003(a)(7), which expressly delegates to the Chief Justice the authority to "suspend, toll, extend, or otherwise grant relief from time deadlines, requirements, or expirations otherwise imposed by applicable statutes [or], Rules[.]"

12

Here, unlike in *Schlick II*, the circuit court denied Mr. Thomas's motion after the five-year period expired. Thus, we will address whether the sentencing court has fundamental jurisdiction over a timely-filed Rule 4-345(e) motion after the five-year period expires. Starting with the basics:

> Jurisdiction embraces two distinct concepts: "(i) the power of a court to render a valid decree, and (ii) the propriety of granting the relief sought." Whether a court has fundamental jurisdiction, or the "power, or authority, . . . to render a valid final judgment," is determined by the applicable constitutional and statutory provisions.

*Kent Island, LLC v. DiNapoli*, 430 Md. 348, 362-63 (2013) (alteration in original) (citations omitted).

A circuit court's jurisdiction has both constitutional and statutory roots.[3] In the Maryland Constitution of 1867, article IV, section 20 provided:

> The said Circuit Courts shall have and exercise, in the respective counties, all the power, authority and jurisdiction, original and appellate, which the present Circuit Courts of this State now have and exercise, or which may hereafter be prescribed by law.

---

Although that issue is not before us, as Justice Biran points out, *id.* at 21 n.10, we make this point only in response to Justice Biran's point, also not before us.

[3] The statutory provision that defines a circuit court's jurisdiction is section 1-501 of the Courts and Judicial Proceedings Article (1974, 2020 Repl. Vol.), which reads:

> The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

MD. CONST., art. IV, § 20 (1867).

This constitutional provision incorporated the common law limits on the circuit court's jurisdiction that existed when this section was adopted in 1867. At that time, circuit courts exercised control over their judgments until the end of the term in which they were entered. *Rutherford v. Pope*, 15 Md. 579 (1860). "A judgment will not be set aside after the expiration of the term at which it was rendered, except upon clear proof of fraud, surprise, or irregularity."[4] *Hall v. Holmes*, 30 Md. 558, 561 (1869).

---

[4] In civil cases, courts had the power to "strike out" a judgment in limited circumstances. Striking out a judgment means that the judgment is stricken and the case is put back on the docket. 2 John Prentiss Poe, *Pleading and Practice in Courts of Common Law* § 395, at 436-37 (4th ed. 1906). The court's discretion to grant a motion to strike a judgment depended on when it was filed. If the motion was filed within the same term in which the judgment was entered, the court had "great latitude," but if it was filed after the term, "a much stricter rule obtains." *Pumpian v. E.L. Rice & Co.*, 135 Md. 364, 365 (1919). This Court explained:

> In passing upon applications [to strike out judgments, when such applications are] made during the same term at which the judgments were entered, our courts usually act liberally, and upon reasonable proof of merit, and other equitable circumstances, strike out the judgments and let the defendant in to be heard.

*Id.* (quoting 2 Poe § 392). "[B]ut where the application to strike out is made by the defendant after the lapse of the term, and when the judgment has consequently become enrolled, much greater strictness is observed." *Martin v. Long*, 142 Md. 348, 349 (1923) (quoting 2 Poe § 392).

We are not aware of caselaw that applies the same principles to sentences imposed in criminal cases. In his concurring opinion, Justice Biran cites to several cases to bolster his argument that a motion filed within the term preserves the court's jurisdiction over a criminal judgment. Concurring Op. of Biran, J. at 12-13. Justice Biran cites *Coleman v. State*, 209 Md. 379 (1956), where the defendant appealed his conviction on the basis that there was no witness to corroborate the testimony of his alleged accomplice. After oral argument in this Court, the defendant submitted an affidavit from his alleged accomplice

14

In describing the court's control over its own judgments, nineteenth-century civil and criminal cases used words with jurisdictional connotations such as "authority," "power," and even "jurisdiction." *See, e.g.*, *Seth v. Chamberlaine*, 41 Md. 186, 194 (1874) (stating that "the Court retains power over its own judgments and orders . . . during the term at which they are entered or made[]" and noting that a circuit court maintains "jurisdiction and power" over a case during the term that an order is made); *McLaughlin v. Ogle*, 53 Md. 610, 611-12 (1880) ("We have no doubt of the *power* of the court thus to reconsider, and correct, at the same term, what is supposed to be an error in its first order." (emphasis added)); *State v. Butler*, 72 Md. 98, 100-01 (1890) (describing the broad "power" and "control" that a circuit court possesses over judgments made during the term they are issued); *Preston v. McCann*, 77 Md. 30, 33 (1893) (stating that "a judgment is subject to

---

in which the accomplice stated that she had committed perjury. The defendant asked this Court to stay its decision so that he could move for a new trial. The Court denied the motion because it found "no authority which would enable [the Court] to grant the petition . . . were we disposed to do so." *Id.* at 389.

Justice Biran also cites *Miller v. State*, 135 Md. 379 (1919), which involved a motion for a new trial and a motion for arrest of judgment due to alleged jury misconduct. And Justice Biran cites *Cleary v. State*, 155 Md. 614, 617 (1928), which involved a motion to strike out the judgment of conviction due to a trial error.

None of these cases address the issue here: Whether the trial court has the power to reduce a sentence after the expiration of the term in which it was imposed. Rather, each of these cases involved a defendant's unsuccessful attempt to obtain a remedy of a different nature, that is, to throw out the conviction due to a serious defect (e.g., fraud, surprise, or mistake) in the trial proceeding. As such, we do not find these cases persuasive, and, for the reasons discussed below, we find persuasive the cases that directly address the power of the court to reduce a sentence after the term expires.

the *control* of the court until the lapse of the term at which it was rendered[]" (emphasis added)).

These common law parameters on the circuit court's control over its judgments endured into the twentieth century: "It is well established and has been the law in this state, from the earliest days, that a court retains power over its own judgments and orders *in both civil and criminal cases during the term* at which they are entered or made." *State ex. rel. Czaplinski v. Warden, Md. Penitentiary*, 196 Md. 654, 657 (1950). And none of the limits to the circuit court's jurisdiction changed when article IV, section 20 of the Maryland Constitution was amended in 1980 to its current form:

> The Circuit Courts shall have and exercise, in the respective counties, and Baltimore City, all the power, authority and jurisdiction, original and appellate, which the Circuit Courts of the counties exercised on the effective date of these amendments, and the greater or lesser jurisdiction hereafter prescribed by law.

1980 Md. Laws, ch. 523, § 2; MD. CONST., art. IV, § 20(a) (2003 Repl. Vol., 2023 Supp.).

Indeed, both before and after that amendment, in both civil and criminal cases, our twentieth-century cases continued to use words infused with jurisdictional significance in describing the court's control over its own judgments.[5] Our caselaw has also acknowledged

---

[5] *See, e.g.*, *Owen v. Freeman*, 279 Md. 241, 245 (1977) (noting that the "*power* of courts in this State to set aside judgments during the term they were entered has long been recognized as inherent to them as courts of record" (emphasis added)); *Ayre v. State*, 291 Md. 155, 159-60 (1981) (finding that during the same term in which the judgment is entered, the circuit court "has inherent *power* to strike out or modify judgments in both civil and criminal cases" (emphasis added) (quoting *Madison v. State*, 205 Md. 425, 431 (1954), *abrogated by Skok v. State*, 361 Md. 52 (2000))); *Christian v. State*, 309 Md. 114, 123 (1987) (recognizing the "common law doctrine that a court has plenary *authority* over its judgments and orders during the term at which they are entered" (emphasis added));

16

that the circuit court's inherent jurisdiction over its judgments was modifiable by rule.[6]

*Williams v. Snyder*, 221 Md. 262, 267-68 (1959) (finding that a motion to strike judgment within the "period prescribed by the rule . . . is within the sound discretion of the court" but "after the lapse" of that period "the power of the court to revise and control such judgment is no longer discretionary"); *Owen v. Freeman*, 279 Md. 241, 245 (1977) (finding that the courts' inherent power over judgments during the term they were entered "is generally subject only to the restraints imposed by rules of court"); *Ayre v. State*, 291 Md. 155, 159-60 (1981) (confirming the circuit court's inherent power over its judgments

---

*Chertkov v. State*, 335 Md. 161, 170 (1994) (recognizing the common law limit on the court's "inherent *power* to modify their judgments" in criminal cases "is now codified in [the predecessor to Rule 4-345(e)]" and thus the "court's modification of its sentence . . . is not illegal in the sense that the court acted without jurisdiction" (emphasis added) (citing *Madison*, 205 Md. at 431)); *Cardinell v. State*, 335 Md. 381, 391 (1994) (finding that the trial judge's modification of a sentence upon a motion filed beyond the 90-day deadline under Rule 4-345 was without "inherent or common law *authority*" (emphasis added)), *overruled on other grounds by State v. Green*, 367 Md. 61 (2001); *Greco*, 347 Md. at 427-28 (finding that the common law *authority* to modify a judgment within the same term "was abrogated by" the predecessor to current Maryland Rule 4-345(e)); *State v. Kanaras*, 357 Md. 170, 184 (1999) ("[Rule 4-345] simply grants the trial court limited continuing *authority* in the criminal case to revise the sentence." (emphasis added)); *Montgomery v. State*, 405 Md. 67, 71 n.3 (2008) ("The five-year limitation upon the Circuit Court's *authority* to revise a sentence under Rule 4-345(e)(1) was not in effect when the sentence in this case was imposed and when the motion under the Rule was filed." (emphasis added)).

[6] In this opinion, our discussion of the circuit court's jurisdiction is intentionally confined to the circuit court's jurisdiction over its judgments and this Court's power to modify that jurisdiction through its rulemaking authority. Nothing in this opinion should be construed to imply that this Court believes it has the power, under its rulemaking authority, to override the General Assembly's decision to confer or take away the circuit court's jurisdiction over a particular class of cases (e.g., juvenile cases).

within the same term as they were entered survives "[i]n the absence of a statute or rule either modifying or rescinding this power").

Here, our concern centers not on a civil case or a motion to strike out a judgment in a criminal case due to a serious defect in the trial such as fraud, mistake, or irregularity. Rather, our concern here involves a very specific type of power in a criminal case: The court's power to reduce a sentence after the expiration of the term in which the sentence was imposed. This Court did not address this issue until 1950, when we decided *Czaplinski*. There, we held that trial courts have no power to reduce a sentence after the expiration of the term in which it was imposed. *Czaplinski*, 196 Md. at 662 ("The precise question has not been decided by this court[.]").

*Czaplinski* involved the denial of an application for leave to appeal the denial of a writ of habeas corpus. *Id.* at 656. The defendant was sentenced for separate crimes by separate courts: the Criminal Court of Baltimore in March 1945 and the Circuit Court for Anne Arundel County in August 1945. *Id.* at 655. His sentence by the latter court ran consecutive to his sentence by the former court. Combined, the defendant faced 18 years of incarceration. *Id.* at 655. The defendant's habeas corpus petition concerned the sentence imposed by the Circuit Court for Anne Arundel County, so it was viable only if he was then incarcerated under the sentence imposed by that court. Determining which sentence a defendant was serving at the time he petitioned for habeas corpus would seem like a simple enough task. But it wasn't simple, because the Criminal Court of Baltimore, after the term in which the sentence was imposed, twice reduced his sentences. If those reductions were valid, then the defendant was finished serving the Baltimore City sentence and was

18

therefore serving the Anne Arundel sentence when he filed his petition. But, if those reductions were void, then he was still serving the Baltimore City sentence. Thus, before addressing the merits, this Court first had to determine whether the Criminal Court of Baltimore had the power to reduce the sentences after the term expired. *Id.* at 657.

> Referring to cases from other jurisdictions, we noted that
>
>> the reported cases we have been able to find which discuss the point hold that [the reduction of a sentence after the term] is also beyond the power of the court, generally upon the ground that when a sentenced has been passed, and has become enrolled, the jurisdiction of the court is concluded and the court has no further authority.

*Id.* at 658. As for why this rule existed, this Court cited a case from Minnesota for the proposition that "[s]ome cases have held that reducing a sentence after the term is a usurpation of the pardoning power which is not vested in the courts," and then cited a case from the Supreme Court of the United States for the proposition that reducing a sentence *during* the term is "an exercise of judicial function and not the usurpation of the executive power to pardon." *Id.* (first citing *State v. Carlson*, 228 N.W. 173 (Minn. 1929); and then citing *United States v. Benz*, 282 U.S. 304 (1931)).

We also noted that in some jurisdictions, the court's power to reduce a sentence was terminated when the "service of sentence has commenced[,]" but that Maryland was one of the jurisdictions in which a sentence reduction was allowed after the service of the sentence began so long as the reduction was ordered before the term expired. *Id.* at 660-61. After surveying the authority from other jurisdictions, this Court ultimately held without qualification that a circuit court has no "jurisdiction" over a sentence *after* the term expires:

19

Ordinarily a sentence cannot be collaterally attacked, but as a court has, in general, no authority to strike out or alter a sentence, once imposed, after the expiration of the term, and a question of *jurisdiction* arises, we think it incumbent on the relator to show that the action of [the judge] was within his powers. We cannot assume that he had a right to reduce the sentences in the face of the practically universal rule that his *jurisdiction* ended with the term after the original sentence was imposed, when it became enrolled. Since we cannot make that assumption we must conclude that the original sentences are still in force and that we cannot now consider the questions raised as to the subsequent sentence.

*Id.* at 663-64 (emphasis added).

We then explained that under the Maryland Constitution, the power to pardon is vested in the Governor. Thus, we admonished,

[w]hether the reduction of a sentence is an exercise of the pardoning power, as was held in Minnesota, or whether it may be a part of the judicial function, as the Supreme Court views it, at least during the term, the judges of the criminal courts of the State should not attempt to reassume a jurisdiction which they have lost, and [referring to the Governor's pardoning power,] to take upon themselves duties which the people and the legislature have placed elsewhere.[7]

*Id.* at 664.

---

[7] Justice Biran minimizes the significance of *Czaplinski* because the record did not show that Czaplinski moved for the sentence reduction *before* the term in which the sentence was imposed had expired. Thus, Justice Biran concludes, "*Czaplinski* cannot be read as distinguishing between civil and criminal cases." Concurring Op. of Biran, J. at 10 n.3. We disagree. We presume that our predecessors in 1950, who had the final say on determining the common law in Maryland, were aware of the principles governing a trial court's retention of jurisdiction over its judgments in civil cases. If our predecessors believed that the rules in civil cases applied to the court's power to reduce a sentence in a criminal case, we doubt they would have used such definitive language, without any qualification, to state that the court had no power to modify a sentence after the term expired. In other words, if the timing of a defendant's motion to modify a sentence was relevant to the court's power to modify a sentence, we presume that our predecessors would have acknowledged such an exception in *Czaplinski*.

One year after deciding *Czaplinski*, this Court adopted a rule allowing a circuit court to modify a sentence within 90 days of its imposition or issuance of a mandate from this Court. *Johnson*, 274 Md. at 40; *see also Schlick II*, 465 Md. at 574 (citing Part 4, Rule 10(c) of the Maryland General Rules of Practice and Procedure). The new rule stated: "In all other criminal cases the Court may reduce a sentence within ninety (90) days after the sentence is imposed, or within ninety (90) days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of appeal."

The first iteration of the rule spoke in terms of the court's *power*, without regard to even *whether* a motion was filed, let alone *when* it was filed. This signals to us that our predecessors, who adopted the initial rule in 1951 right on the heels of *Czaplinski*, had a modest objective in mind: To trade one hard stop—the end of the term—for another—90 days from sentencing or issuance of this Court's mandate. As this Court explained 24 years later, our predecessors adopted this rule to "ameliorate the harshness of the former practice which held that the jurisdiction of the trial court to modify a sentence expired after the Term in which the judgment had been entered."[8] *Johnson*, 274 Md. at 40.

---

[8] Justice Biran offers a theory that, if correct, would mean that when the Court in *Johnson* made this statement, it was egregiously ill-informed about this Court's intent when it adopted the rule in 1951. That's because under Justice Biran's theory, so long as the defendant moved to reduce the sentence within the same term the sentence was imposed, there was no temporal limit on the court's power to reduce the sentence. Thus, under Justice Biran's theory, *every* defendant could have preserved indefinitely the court's authority to modify the sentence by the simple act of filing a motion *immediately* after being sentenced. If Justice Biran were correct, it means that the Court in *Johnson* perceived a "harshness of the former practice" that did not exist. And it means that, when it adopted the rule in 1951, the Court intended to shorten, rather than lengthen, the time in which the court had the power to reduce a sentence, thus *exacerbating* whatever harshness existed in the "former

This Court amended that rule in 1961 to allow a court to modify a sentence within 90 days, either sua sponte or on motion. *Schlick II*, 465 Md. at 574. The 1961 amendment to the rule also "allowed a party to file a motion to revise a sentence within 90 days of the imposition of sentence, after which the court could modify the sentence 'any time "thereafter."'" *Id.* at 574-75 (quoting *State v. Robinson*, 106 Md. App. 720, 723 (1995)). Thus, under the 1961 amendment to the rule, circuit courts could sit indefinitely on a timely-filed motion. *Greco*, 347 Md. at 435.

The indefinite nature of the court's authority to reduce a sentence upon a timely-filed motion endured for 43 years. Prompted by, among other things, negative press coverage of reconsidered sentences, multiple bills were introduced in the General Assembly to curtail a judge's authority to reduce a sentence.[9] In an effort to protect the court's authority to reduce a sentence, the Rules Committee voted to recommend to this Court a revised rule that contained a five-year limit—waivable by agreement by the defendant and the State—applicable only to crimes of violence. Rejecting that recommendation, in 2004, this Court adopted the current version of Rule 4-345(e), which imposed a five-year limitation for *all* convictions and did not include the waiver clause recommended by the Rules Committee.

---

practice." It strikes us as highly unlikely that the Court in 1975 would have so misunderstood the intent of the Court in 1951 when it adopted the new rule.

[9] Most of these bills would have given the court only one year after the initial sentence was imposed to reduce a sentence. *See* 2001 H.B. 62 (one-year limit); 2001 S.B. 632 (one-year limit); 2002 H.B. 160 (one-year limit); 2002 S.B. 73 (one-year limit); 2002 S.B. 334 (one-year limit); 2003 H.B. 602 (15-month limit); 2003 H.B. 842 (one-year limit); 2003 S.B. 411 (one-year limit); 2004 H.B. 464 (five-year limit); 2004 H.B. 812 (one-year limit); 2004 H.B. 1234 (15-month limit); 2004 S.B. 333 (one-year limit).

*See* May 11, 2004 Rules Order. In its current form, Rule 4-345(e) uses a phrase—"the court has revisory *power*"—with the same jurisdictional connotations as the caselaw cited above, and, within that same sentence, uses a phrase that terminates such power: The court "may not revise the sentence" after the five-year period. (Emphasis added).

4

Against this backdrop, we conclude that *Schlick I* was incorrectly decided. The above authorities establish that, under common law, the power to modify a sentence—that is, the court's fundamental jurisdiction—extended only to the end of the term in which the judgment was entered. Indeed, in *Schlick II*, we stated that "[p]rior to 1951, a court could revise a sentence only until the end of the term of court." 465 Md. at 574 (citing *Bereska v. State*, 194 Md. App. 664, 680-81 (2010)).[10] That power was modifiable by rule under article IV, section 18(a) of the Maryland Constitution, and such rules carry the force of law until they are modified either by this Court or by the General Assembly.[11] *See Brown v. State*, 470 Md. 503, 528 (2020).

---

[10] In *Bereska*, the Appellate Court of Maryland repeatedly cited *Czaplinski*, including for the proposition that "[c]ourts lacked the power to vacate or modify sentences after the term of court, under the rationale that 'when a sentence has been passed, and has become enrolled, the jurisdiction of the court is concluded and the court has no further authority.'" 194 Md. App. at 682 (quoting *Czaplinski*, 196 Md. at 658).

[11] Article IV, section 18(a) of the Maryland Constitution provides:

The Supreme Court of Maryland from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Supreme Court of Maryland or otherwise by law. The power of courts other than the Supreme

Although in 1961, this Court exercised its rulemaking authority to extend indefinitely the court's power to modify a sentence on a timely motion, we amended that rule in 2004 to impose the five-year limit on that power. In sum, at common law, circuit courts never had fundamental jurisdiction to reduce a sentence *after* the expiration of the term in which the judgments were imposed, and by rule, since 2004, their authority to modify a sentence under Rule 4-345(e) has been limited to five years after the imposition of the sentence. What the rule giveth, the rule may taketh away. We therefore hold that a sentencing court does not, as held in *Schlick I*, have fundamental jurisdiction over a timely-filed Rule 4-345(e) motion beyond the five-year period provided under the rule.

5

Nor can we shrug off Rule 4-345(e)(1) as a mere claim-processing rule under *Rosales v. State*, 463 Md. 552 (2019). In *Rosales*, we addressed, among other things, whether the failure to timely file a notice of appeal under Maryland Rule 8-202(a) deprives appellate courts of jurisdiction. We noted that the Supreme Court of the United States, in interpreting the federal counterpart to Rule 8-202(a), started from the premise that "only Congress may determine a federal court's subject-matter jurisdiction[]" and held that "[a] time limit not prescribed by Congress ranks as a mandatory claim-processing rule, serving 'to promote the orderly progress of litigation by requiring that the parties take certain

---

Court of Maryland to make rules of practice and procedure, or administrative rules, shall be subject to the rules and regulations adopted by the Supreme Court of Maryland or otherwise by law.

24

procedural steps at certain specified times.'" *Rosales*, 463 Md. at 567 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 19 (2017)).

We concluded that the same reasoning applies to the 30-day deadline for filing a notice of appeal under Maryland Rule 8-202(a). That is, appellate jurisdiction in Maryland is conferred exclusively by statute, except where it is constitutionally created. *Id.* at 563 (citing *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 565 (2010)). Before 1957, the 30-day deadline was imposed by statute, which explains why some of our earlier cases referred to that deadline as jurisdictional. *Id.* at 564 (citing MD. CODE ANN., art. 5 § 6 (1951)). But that is no longer true. In 1957, the General Assembly removed that provision from the statute, and in its stead, this Court adopted a 30-day requirement with the predecessor of present-day Rule 8-202(a). *Id.* Thus, because it is now found in Rule 8-202(a), the 30-day requirement is no longer jurisdictional but is properly understood as one of the many rules adopted by this Court for processing appeals.[12] *Id.* at 568.

*Rosales* is inapplicable here because the circuit court's jurisdiction over its own judgment rests on a different foundation: centuries of common law—left undisturbed by the General Assembly—as modified by this Court's duly adopted rules. To illustrate why

---

[12] In his concurring opinion, Justice Biran states that "in *Rosales v. State*, we explained that 'a time limit prescribed only in a court-made rule . . . is not jurisdictional; it is, instead, a mandatory claim-processing rule subject to forfeiture if not properly raised[.]'" Concurring Op. of Biran, J. at 1 (alterations in original) (quoting *Rosales*, 463 Md. at 567 (quoting *Hamer*, 583 U.S. at 19)). However, as Justice Biran's citation correctly indicates, in *Rosales*, we were quoting a case from the Supreme Court of the United States in our discussion of its treatment of the notice of appeal deadline under Federal Rule of Appellate Procedure 4(a)(5)(C). We did not adopt that passage as our holding. Nor did we say that every rule that imposes a time limit is a claim-processing rule.

25

this difference matters, contemplate the consequences if Rule 8-202(a) and Rule 4-345(e) were both repealed. If the former were repealed, the appellate courts would still have jurisdiction, but the parties and the appellate courts would not have the benefits of the fair and efficient administration of justice that Rule 8-202(a) provides. Thus Rule 8-202(a) is, in the truest sense, a claim-processing rule. In contrast, if Rule 4-345(e) were repealed, the circuit court's power to modify a sentence would be governed by common law, which means that circuit courts would have no authority or power—that is, no jurisdiction—to revise a sentence beyond the term in which the judgment was entered.[13] So, Rule 4-345(e)—including its five-year limitation—is inherently jurisdictional and does not belong in the claim-processing category.[14]

D

Mr. Thomas argues that because Rule 4-345(e) vests the sentencing court with discretion to decide a timely-filed motion to modify, the court must exercise its discretion by ruling on it. Mr. Thomas relies on our statement in *Schlick II* that "Rule 4-345(e)

---

[13] In his concurring opinion, Justice Biran suggests that "the common law in Maryland would continue to provide sufficient foundation to entertain motions to modify judgments filed in the same term, even if those timely motions were held under advisement for several terms before being decided." Concurring Op. of Biran, J. at 16. But Justice Biran does not identify any case that stands for such a proposition in the context of a motion to reduce a sentence. As discussed above, this Court has consistently stated that the circuit court's jurisdiction under common law to modify a sentence does not extend beyond the end of the term. *See, e.g.*, *Madison*, 205 Md. at 433-34; *Czaplinski*, 196 Md. at 663-64. We are aware of no common law basis for a circuit court to reduce a sentence after the end of the term in which the sentence was imposed.

[14] In any event, even if Rule 4-345(e) is a claim-processing rule, it's still mandatory, and because the State never waived the five-year limit on the court's revisory power, there is no compelling reason not to enforce it.

includes a defendant's right to seek meaningful redress by filing a timely motion for modification of sentence and obtaining the meaningful exercise of a circuit court's discretion to act on that motion within the time limits prescribed by the Rule." 465 Md. at 585-86. Mr. Thomas also relies on cases in which this Court has stated that when a decision is committed to the discretion of a trial court, that court abuses its discretion by failing to exercise it.[15]

Mr. Thomas's argument assumes that to "act" on a Rule 4-345(e) motion in this context means to either grant or deny it and that indefinitely deferring the motion is not an option. We reject that premise. When a timely Rule 4-345(e) motion is filed, the court has three choices: grant it, deny it, or defer it "for up to five years after the imposition of the original sentence." *Brown*, 470 Md. at 515. A grant of the motion, of course, results in a sentence modification. A denial—which the court may do immediately and without a hearing—forecloses the possibility of a sentence modification. *Franklin v. State*, 470 Md. 154, 197 n.17 (2020). A deferral is neither a grant nor a denial: It means that the court is neither ready to reduce the sentence nor foreclose that possibility.[16]

---

[15] Mr. Thomas cites *Gunning v. State*, 347 Md. 332, 352 (1997) ("A proper exercise of discretion involves consideration of the particular circumstances of each case."); *Gray v. State*, 368 Md. 529, 565 (2002) ("[O]ur cases hold that the actual failure to exercise discretion is an abuse of discretion."); and *Nelson v. State*, 315 Md. 62, 70 (1989) ("If the judge has discretion, he must use it and the record must show that he used it.").

[16] In her dissent, Justice Eaves expresses the view that to defer the motion is to avoid deciding it, and that our holding will "create the perception that judges should treat these motions as a nuisance to be swept under the rug and ignored until the judge is required to dismiss the motion for lack of jurisdiction, dodging the merits altogether." Dissenting Op. of Eaves, J. at 8-9. We neither say nor imply any such thing. We simply recognize that

In *Schlick II*, the circuit court never had the option to deny, grant, or defer a Rule 4-345(e) motion because Schlick's counsel neglected to file one. It was in that sense that Schlick was denied the benefit of the court's five-year discretionary period. But here, Mr. Thomas timely filed his motion and timely supplemented it three times, the last time just four months before the expiration of the five-year period. At each juncture, the court could have granted his motion, denied it, or deferred it. The court expressly chose the deferral option by holding it in abeyance on the initial filing and then by noting and intentionally taking "no action" on the supplemental filings. *See Franklin*, 470 Md. at 178 (interpreting "no action" as a deferral of the motion to modify sentence). Those choices required an exercise of discretion. And the record reflects that each time, Mr. Thomas's counsel was advised of the court's action.[17]

Rule 4-345(e) does not limit the court's discretion to the binary choice of denying or granting the motion. Rather, if the court is not convinced that the sentence should be modified when presented with the initial motion or any supplemental motions, in each instance, the court has discretion under Rule 4-345(e) to deny the motion then and there or to give the defendant more time to demonstrate that a sentence modification is warranted. It seems undeniable that making that choice—deny, defer, or grant—requires the court to make a judgment call, which is the essence of exercising discretion. And because courts are presumed to understand and properly apply the law, *State v. Chaney*, 375 Md. 168, 181 (2003), we expect that courts will consider timely-filed motions and exercise their discretion accordingly.

[17] In her dissent, Justice Watts maintains that by setting the matter for a hearing in 2021, the court either did not appreciate the "significance" or "mandatory nature" of the five-year period in Rule 4-345(e) or, alternatively, was unaware it had expired. Dissenting Op. of Watts, J. at 10. Seeing no other possible reason for scheduling a hearing, Justice Watts asserts that the court must have thought it had the authority to consider the motion on its merits. *Id.* at 9. And Justice Watts infers "that the circuit court did not consider the motion, before the deadline passed, and exercise the discretion to grant it, deny it, or defer it and permit the deadline to pass." *Id.* at 10. We disagree.

28

Whether the court defers the motion for the full five-year period or denies it, the result is the same. The rule does not require the court to convert a deferral into a formal denial at any point along the five-year timeline, and we see no compelling reason to force a judge's hand by imposing such a requirement, particularly by judicial fiat outside the

As noted above, courts are presumed to understand and properly apply the law. *Chaney*, 375 Md. at 181. Here, the judge who entered "Noted. No action" on Mr. Thomas's supplemental filings was the Honorable William R. Greer—the same judge who denied the petition for coram nobis that became the subject of our decision in *Franklin*. The Court's recitation of the procedural history in *Franklin* included statements attributed to Judge Greer at the November 2, 2017 hearing on the coram nobis petition—statements that reflect that Judge Greer understood Rule 4-345(e)'s deadline. 470 Md. at 173.

And this Court issued its opinion in *Franklin* on August 13, 2020—eight months after Mr. Thomas's five-year deadline expired, but five months before Mr. Thomas filed his January 8, 2021 pro se supplement. We presume that Judge Greer took an interest in the opinion from this Court that affirmed his decision. Given how extensively this Court examined Rule 4-345(e) in *Franklin*, we have no difficulty crediting Judge Greer with the presumption that he understood the significance and mandatory nature of Rule 4-345(e).

As for why Judge Greer scheduled a hearing in response to Mr. Thomas's pro se motion filed more than a year after the five-year period expired, we can only speculate. Perhaps, as Justice Watts speculates, Judge Greer did not realize when he read Mr. Thomas's supplement that the deadline had already expired. Dissenting Op. of Watts, J. at 10. If so, we don't fault him. By that time, the deadline had expired 13 months earlier. Mr. Thomas's 2018 and 2019 supplements, which were filed by counsel, alerted the court to the December 2019 five-year deadline. So, when Judge Greer entered "Noted. No action" on them, we presume he was aware of the deadline. In contrast, Mr. Thomas's pro se supplement did *not* mention that the deadline had already passed. So perhaps Judge Greer read and was moved by Mr. Thomas's pro se supplement, and without going back to review the prior filings or recalling the deadline from memory, granted a hearing under the assumption that the five-year period had not yet expired. In any event, it does not matter whether Judge Greer scheduled the hearing under the assumption that the court still had revisory power over the sentence. If he did, it would not change the fact that, "upon consideration" of Mr. Thomas's initial motion in which he requested a hearing, Judge Bragunier decided not to grant the hearing and instead held the motion in abeyance. Nor does it change the fact that Mr. Thomas's three timely supplements did not persuade Judge Greer to grant a hearing *within* the five-year period.

29

rulemaking process.[18] As we see it, a judge who wishes to hold open the possibility of modifying the sentence up to the very end of the five-year period is permitted to do so by rule.[19] As we stated in *Brown*, Rule 4-345(e) permits the court to "defer action on the motion *for up to five years* after the imposition of the original sentence." 470 Md. at 515 (emphasis added). The record reflects that the circuit court did precisely that here. As a result, the court did not violate Rule 4-345(e) by deferring Mr. Thomas's motion for the entire five-year period.

> **THE JUDGMENT OF THE APPELLATE COURT OF MARYLAND IS REVERSED. COSTS TO BE PAID BY THE RESPONDENT.**

---

[18] In any event, even if we did impose such a requirement, we fail to see how it would benefit Mr. Thomas. *First*, a formal denial of a timely-filed motion would not be appealable, so if the sentencing judge took the ministerial action of formally denying the motion at the last minute before the five-year period expired, Mr. Thomas would find himself in the same place, with no appellate recourse. *See Brown*, 470 Md. at 551. *Second*, Mr. Thomas seems to believe that if we required the court to expressly rule within the five-year period, the remedy for non-compliance would be a revived power to decide the merits of the motion after that period. Under Mr. Thomas's theory, therefore, a court could unilaterally free itself from the shackles of the five-year limitation by disregarding it. Mr. Thomas's proposed holding would effectively gut the five-year period imposed by Rule 4-345(e).

[19] As a practical matter, due to the victim notification and hearing requirements, to schedule a hearing, the sentencing judge would have to start the ball rolling before the last day of the five-year period. That said, waiting until the last day would not be impossible if the victim or the victim's representative waived notice and the right to appear at the hearing.

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2023

---

STATE OF MARYLAND

v.

STEVEN ANTHONY THOMAS

---

Fader, C.J.
Watts
*Hotten
Booth
Biran
Gould
Eaves,

JJ.

---

Concurring Opinion by Biran, J.

---

Filed: August 29, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, § 3A, she also participated in the decision and adoption of this opinion.

Respectfully, I concur in the judgment of the Court. Although I do not see any grounds here that would have allowed the circuit court to grant Mr. Thomas's motion to modify his sentence after the conclusion of the five-year period set forth in Maryland Rule 4-345(e), I do not agree with the Majority's jurisdictional analysis of the issue. Instead, I would hold that the five-year period is a mandatory claim-processing rule that restricts the ability of a court to modify a sentence, and is not subject to extension based on case-specific equitable doctrines. However, like deadlines contained in other claim-processing rules, application of the five-year period in Rule 4-345(e) can be waived or forfeited by the State, and it can be extended by order in limited circumstances, such as when an extension is necessary because a movant has been deprived of a legal right, or when an extension is authorized through valid use of emergency authority.

Just five years ago, in *Rosales v. State*, we explained that "a time limit prescribed only in a court-made rule ... is not jurisdictional; it is, instead, a mandatory claim-processing rule subject to forfeiture if not properly raised[.]" *Rosales v. State*, 463 Md. 552, 567 (2019) (quoting *Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. 17, 19 (2017)). We did not hedge our language to leave open the possibility that *some* time periods found only in our rules might be jurisdictional. Our approach in *Rosales* was thus also in accord with the rules of construction in the Maryland Rules themselves: "These rules shall not be construed to extend or limit the jurisdiction of any court[.]" Md. Rule 1-201(b).

Today, however, the Majority inserts an asterisk after our statement in *Rosales* and after Maryland Rule 1-201(b), stating that certain time limits in our rules can be jurisdictional, and holding that the five-year period in Rule 4-345(e) is such a jurisdictional

provision. The Majority first notes that jurisdiction has "both constitutional and statutory roots." Maj. Op. at 13. Next, because our rules have "the force of law until they are modified either by this Court or by the General Assembly[,]" Maj. Op. at 23 & n.11 (citing Article IV, section 18(a) of the Maryland Constitution), the Majority concludes that we have the power to expand or contract the jurisdiction of Maryland courts by rule – at least to the extent that such rules do not conflict with a statute or a constitutional provision. Thus, although the Majority leaves in place the precise holding of *Rosales* – *i.e.*, that the 30-day period for filing a notice of appeal in Maryland Rule 8-202 is not jurisdictional – and although the Majority implies that time limits in our rules will not be jurisdictional unless they modify common law limits on courts' power, the Majority nevertheless leaves unclear precisely how to determine whether a given time limit in a rule is jurisdictional.

Putting aside my concerns about creating confusion in interpreting our rules, I disagree with the Majority's analysis of the common law jurisdiction of Maryland's courts over their own judgments. As I read the cases, before the advent of rules governing courts' revisory powers (such as Rule 4-345(e)), courts in Maryland *could* exercise general power over their judgments in later terms, provided that a motion requesting as much was filed during the judgment's term. Additionally, even after the end of the term, courts did not lose jurisdiction over their judgments. To be sure, the standards for granting motions to vacate judgments that were filed after the end of the term became more exacting (and courts typically employed language with jurisdictional connotations in discussing judgments after the end of the term), but judgments could still be vacated on a late-filed motion if a

2

sufficient showing was made, and particular grounds for relief were satisfied. Our recent practice is in accord with my read of common law jurisdiction.

**A. The Common Law Did Not Deprive Maryland Courts of Jurisdiction Over Their Judgments After the End of the Term.**

According to the Majority, at common law, "circuit courts exercised control over their judgments until the end of the term in which they were entered." Maj. Op. at 14 & n.4. I disagree with the Majority's understanding of the common law in two respects. *First*, a review of pertinent caselaw and treatises leads to the conclusion that Maryland's courts could exercise general revisory power over the judgment – in both criminal and civil cases – after the end of the term, so long as a motion requesting revision of the judgment was filed during the same term as the judgment. *Second*, although the common law often did prevent vacating a judgment when the request to do so was made after the end of the term, courts did not lose jurisdiction over their judgments after the term, nor did they lose all power to act.

1. <u>During the Same Term or Upon Motion Filed at That Term, Maryland Courts Had "Inherent Authority" to Revise Their Judgments.</u>

As the Majority correctly notes, in the civil context, Maryland courts had general authority at common law to revise their judgments in later terms, so long as a motion requesting that relief was filed in the same term as the judgment.[1] That is, the analysis did

---

[1] The cases often referred to this revisory power as the power to "strike out" a judgment. As the Majority notes, striking out a judgment typically meant that the judgment would be "stricken and the case [] put back on the docket." Maj. Op. at 14 n.4. However, a court could do more than simply decide whether to strike the judgment and return the case to the docket. This is because the power to strike a judgment included other powers as well. For instance, a court could "impose terms – as, for example, that the defendant

3

not turn on when the court exercised revisory power; it turned on when a party asked a court to do so. To illustrate this, in a case cited by the Majority, a motion to strike a judgment was filed during the same term in which a judgment was entered, but the court did not rule on the motion until a later term. *See McLaughlin v. Ogle*, 53 Md. 610, 611 (1880).[2] Ultimately the court granted the motion and struck its prior judgment. *Id.* That decision was then appealed, and this Court dismissed the appeal, reasoning that, in prior cases, courts sometimes waited "several terms" before deciding such a motion:

> It is plain the motion was made during the term at which the judgment was rendered, and that upon that motion the judgment was stricken out. It is true there was some delay before the final action of the Court, but this does not affect the question .... That depends upon the time when the motion was *made,* and not upon the time when it was decided. In some of the cases before referred to there was much longer delay, a delay of several terms, before final action on the motion was had.

*Id.* (emphasis in original).

Thus, not only could a court exercise control over its civil judgments during the same term; a timely-filed motion would allow a court to continue to exercise that control until the motion was decided – even if the motion was decided at a later term. *See, e.g.,*

---

shall not plead limitations." 2 John Prentiss Poe, *Pleading and Practice in Courts of Common Law*, § 396 (5th ed. 1925). Further, "[t]he power to strike out a judgment during the term ... seems to carry with it the power to order it to be amended, and this power may well be exercised in the absence of a positive rule of court or statute to the contrary." *Id.*; *see also Anders v. Devries*, 26 Md. 222, 226 (1867) (noting that a judgment "still under the control of the Court" during the same term was "liable to be altered or amended").

[2] The motion was made at "the January Term, 1879" but the court held the motion under advisement and did not grant the motion until the following "September Term[.]" *McLaughlin*, 53 Md. at 610-11.

*Preston v. McCann*, 77 Md. 30, 33 (1893) ("[A] judgment is subject to the control of the court until the lapse of the term[] ... and it makes no difference in this respect, and no appeal is given, though the motion to strike out, made during the term, was not acted upon until after the lapse of the term."); *Harvey v. Slacum*, 181 Md. 206, 208 (1942) ("[A]t common law [] the Courts retain absolute control over their judgments during the term ... [and] have inherent power to strike them out. When a defendant moves to strike out a judgment during the term at which it is entered, the application is within the sound discretion of the Court[.]").

The Majority acknowledges that Maryland courts had common law authority to revise their civil judgments during the same term, as well as in later terms upon a motion filed at the same term. However, because the Majority is "not aware of caselaw that applies the same principles to sentences imposed in criminal cases[,]" Maj. Op. at 14 n.4, the Majority concludes that this rule did not apply in the criminal context. Like the Majority, I have not seen a Maryland case specifically addressing whether this rule also applied in the criminal context. However, there are several reasons to conclude that the same rule applied in Maryland in both the civil and criminal contexts.

*First*, the rationale behind the effect of a timely motion to strike a judgment in the civil context applies with at least equal force in the criminal context. Even though our own caselaw has not elaborated much upon why this rule existed – *i.e.*, why a timely-filed motion would allow a court to continue to exercise complete control over its judgment until the motion was decided – other state courts adhering to this rule have provided more explanation. For instance, one court explained that "great hardship" could result if a court

were to render a judgment at the end of the term, only to be immediately deprived of jurisdiction over that judgment to consider a timely-filed motion seeking revision:

> Indeed, no reason ... has occurred to us, which would compel the court to decide the motion made to vacate a judgment at the term in which it was entered, or lose power or jurisdiction over the subject matter of the motion. If such was the law, great hardship might occur in many cases, and the ends of justice might often be defeated. Suppose a judgment by default should be entered on the last day of a term of court, which was entirely destitute of merit, and the defendant should immediately appear and enter a motion to vacate the judgment, but owing to the press of other business the court could not find time to take up and act upon the motion ... would justice be subserved or the policy of the law be carried out by holding that the court was powerless to continue the motion to be heard and determined upon its merits at the next ensuing term of court? We apprehend not.

*Hibbard v. Mueller*, 86 Ill. 256, 258 (Ill. 1877). If a court should be able to rule upon a timely filed motion in a civil case in a later term – thus avoiding "great hardship" by allowing the court enough time to consider the motion and assess whether its judgment had sufficient merit – then it seems that a court certainly should have had the same power when a criminal judgment was at issue, and the stakes were even higher.

In addition to concerns about unnecessary hardship, other cases articulated a procedural rationale as well. A timely motion – made before the end of the term when a judgment became enrolled – provided notice that the judgment was still under control of the court and should not yet be wholly relied upon. That is, a timely motion operated to keep proceedings unfinished and in progress until the motion was decided, and to provide notice of that fact. *See, e.g.*, *Spalding v. Spalding*, 12 Ohio Law Abs. 589, 590 (Ohio App. 1932) (holding that court had jurisdiction at a later term to rule upon a timely motion to set aside a judgment, even though the motion was not formally continued, because "a

6

presumption exists that the continuance was made and that the motion stood for hearing at the succeeding term"); *Wabash Ry. Co. v. Gary*, 132 N.E. 737, 738 (Ind. 1921) ("[T]he motion by appellee to set aside and vacate such judgment, duly presented before the expiration of the term, kept the proceedings in fieri, so that the motion could be ruled on at a later term, with like effect as if the judgment had been set aside at the same term."); *First Christian Church of Medford v. Robb*, 138 P. 856, 857 (Or. 1914) (explaining that "an appropriate motion" to set aside a judgment could cause proceedings to "remain under consideration and not finally disposed of"). Again, I see no reason why this rationale would not apply with equal force in the criminal context.

*Second*, a motion to revise a criminal judgment filed after the end of the term was subject to a stricter standard. *See, e.g.*, *Johnson v. State*, 215 Md. 333, 336 (1958) ("[T]he general rule is that a common-law court has no right to strike out or modify a judgment, *upon motion made after the expiration of the term* ... [except] for fraud, surprise or mistake.") (emphasis added); *Miller v. State*, 135 Md. 379, 382-83 (1919) (noting that "the *motion* to strike out the judgment *was not made until after the expiration of the term*. In these circumstances we do not think appellants have complied with the rule as to proof of fraud, deceit, surprise or mistake in entering the judgment.") (emphasis added). This suggests that a motion filed during the same term as the judgment had the same effect in the criminal context as it did in the civil context. If, as the Majority concludes, Maryland courts at common law lost jurisdiction over criminal judgments at the end of the term (even upon timely motions), one would not expect our criminal cases to focus on the timing of

7

the motion in determining which standards applied, rather than the timing of the court's ruling on that motion.

*Third*, Maryland criminal procedure treatises of the time did not make any distinction between civil and criminal practice with respect to the end-of-term rule. Instead, these treatises often referenced civil cases in discussing revision of judgments in the criminal context, without noting any relevant distinctions between civil and criminal practice. *See* LEWIS HOCHHEIMER, A MANUAL OF CRIMINAL LAW AS ESTABLISHED IN THE STATE OF MARYLAND 118 (1889) ("Courts, in both civil and criminal cases, *retain power over their judgments and orders during the term at which they are entered or made, and may, during that time, set them aside, or change or modify them, as circumstances may require.*") (citing *Seth v. Chamberlaine*, 41 Md. 186, 194 (1874)) (emphasis in original). Indeed, one Maryland criminal procedure treatise, relying wholly on civil cases, focused upon the significance of the timing of the motion to strike in determining the standard that a court would apply in considering its prior criminal judgments, including the sentence component of those judgments:

> During the term in which the sentence of the defendant was handed down, the court retains full control to set aside or modify its sentence. The defendant may file a motion to strike out the sentence during or after the term in which it was handed down …. *Where the motion to strike out the judgment or sentence is filed after the term in which the judgment or sentence is entered, the judgment will not be stricken out unless there is proof of surprise, fraud, deceit or irregularity.*

HYMAN GINSBERG & ISIDORE GINSBERG, CRIMINAL LAW AND PROCEDURE IN MARYLAND 413-14 (1940) (emphasis added; paragraph breaks and footnotes omitted).

*Fourth*, Maryland's courts have repeatedly rejected one possible limit to modifying a judgment in criminal cases that courts in other jurisdictions have adopted, further suggesting that our common law did not differentiate between criminal and civil judgments in the context of a motion to strike. Those other courts held that jurisdiction over a criminal judgment is lost when the defendant begins serving the sentence, because at that time custody of the defendant transfers to the executive branch, and striking the judgment could, among other things, pose separation of powers problems by infringing upon the pardon power. *See State ex rel. Czaplinski v. Warden, Md. Penitentiary*, 196 Md. 654, 657-60 (1950) (summarizing decisions that have held that a sentence cannot be reduced once a defendant begins serving it). On multiple occasions, this Court has rejected that argument. *See, e.g.*, *State v. Butler*, 72 Md. 98 (1890) (rejecting argument that a court could not strike a judgment after a convicted defendant had been sentenced and committed to custody); *Czaplinski*, 196 Md. at 660-61 (noting that Maryland and other jurisdictions have allowed sentences to be decreased "even though execution has been entered into"); *State v. Schlick*, 465 Md. 566, 578 n.4 (2019) ("*Schlick II*") (reiterating that, in Maryland, "modifying a sentence is a judicial act that does not violate the separation of powers doctrine nor usurp the Governor's power to pardon").

Indeed, in rejecting the idea that Maryland courts lose jurisdiction over their criminal judgments after a sentence is executed, we have noted that Maryland has followed other jurisdictions, including Georgia and the federal courts, in interpreting the power of the courts to reduce sentences. *See Czaplinski*, 196 Md. at 660-61. This is significant because multiple criminal cases from those other jurisdictions have treated civil and

9

criminal cases the same for purposes of the end-of-term rule. These cases note that a motion filed during the term allows a court to continue exercising control over its criminal judgment even after the term is over. *See, e.g.*, *United States v. Mayer*, 235 U.S. 55, 67 (1914) ("In the absence of statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered, *unless the proceeding for that purpose was begun during that term*.") (emphasis added); *Gray v. State*, 850 S.E.2d 36, 39 (Ga. 2020) ("Georgia courts have long applied the common-law rule that the trial court has the inherent authority to modify a judgment within the term of court and that a motion made during the term serves to extend the power to modify.") (cleaned up). Thus, had the issue been squarely raised in a Maryland criminal case,[3] the same rule likely would have prevailed.

---

[3] The Majority relies primarily on *Czaplinksi* for the proposition that a different rule applied at common law in civil versus criminal cases. In *Czaplinksi*, a criminal court in Baltimore City originally sentenced the defendant on March 1, 1945. *Czaplinksi*, 196 Md. at 655. In August 1947, the court struck out the sentence and resentenced the defendant to less prison time. *Id.* at 655-56. In December 1947, the same court reconsidered the reduced sentence, struck it out, and resentenced the defendant to a still lesser sentence. *Id.* at 656. Notably, this Court observed that "[t]here [was] nothing in the records of the Criminal Court of Baltimore to show why these reductions were made, nor do the docket entries show that any petition, motion, or application was filed in the Court asking for such a reduction." *Id.* Thus, this Court did not need to decide whether a motion filed within the same term as the original sentence would have allowed the lower court to reduce the sentence after the end of the term. The Court did not acknowledge that, in civil cases, a court could strike its judgment after the term expired if a motion requesting such relief had been filed before the end of the term. Thus, *Czaplinksi* cannot be read as distinguishing between civil and criminal cases. If there *had* been a "petition, motion, or application" requesting a sentence reduction, and if that request had been made before the end of the term that included March 1, 1945, it may well be that the *Czaplinksi* Court would have held that at least the first sentence reduction was within the lower court's power to grant.

10

In sum, the Majority's conclusion that Maryland courts at common law treated revisions of criminal judgments differently from civil judgments rests on shaky ground. In the civil context, a timely motion to strike a judgment served to keep the matter open, and the reasons underpinning that rule seem to apply with at least equal force in the criminal context as well. Although no Maryland case is exactly on point, language in our criminal cases suggests that the timing of the motion – rather than the ruling – drove the analysis.[4]

---

In *Wilson v. Warden, Md. Penitentiary*, another case cited by the Majority, there was a request by the petitioner to strike out an earlier sentence. 200 Md. 652 (1952). The court imposed the original sentence on December 15, 1947. *Id.* On April 21, 1949, at the request of the petitioner, the court struck out the original sentence and resentenced him. *Id.* This Court held that the court "had no power to reduce or strike out the sentence after it became enrolled, and [the court's] action in regard thereto was a nullity." *Id.* at 653. This Court did not say when the petitioner had requested that the court strike out his sentence. Thus, *Wilson* also does not stand for the proposition that, after the end of the term when the sentence was imposed, a court lost jurisdiction to rule on a motion to strike out a sentence imposed during the term. The same goes for *Madison v. State*, 205 Md. 425 (1954). In that case, the defendant was sentenced in October 1951. *Id.* at 429. He filed a motion to strike out the judgment in February 1954. *Id.* at 430. Thus, in *Madison*, this Court had no occasion to consider whether, contrary to the practice in civil cases, a motion filed in the same term as the original sentence could have been decided after the end of the term.

[4] This Court's description of the adoption of the predecessor to Rule 4-345(e) as "ameliorat[ing] the harshness of the former practice which held that the jurisdiction of the trial court to modify a sentence expired after the Term in which the judgment had been entered[,]" *Johnson v. State*, 274 Md. 29, 40 (1975), was partially correct. To the extent the rule for the first time allowed a defendant to move for a sentence modification after the end of the term in which the sentence was imposed without requiring the defendant to show fraud, mistake, or irregularity, it did ameliorate what otherwise would have been some harsh outcomes. For example, prior to the advent of the rule, if a defendant was sentenced on the last day of the term, a motion to strike out the sentence filed the next day could only have been granted if the defendant showed that it was the result of fraud, mistake, or irregularity. Thus, the Majority is incorrect that, under my view, this Court in *Johnson* perceived a harshness of the common law practice "that did not exist." Maj. Op. at 21 n.8. The new rule allowed a court to reduce a sentence within 90 days after the sentence was imposed (or 90 days after the mandate was received from this Court), ameliorating the harshness of the common law practice that gave some defendants little time to move to

11

Additionally, Maryland criminal treatises of the time, as well as the approach of other jurisdictions that, like Maryland, did not cut off a criminal court's revisory authority when a sentence began to be served, further support my view: a timely motion to strike a judgment in the criminal context had the same effect as a timely motion in the civil context, keeping the matter open and under the court's control until the motion was resolved.

2.  <u>Upon a Motion Filed After the End of the Term, Maryland Courts Had the General Equitable Power to Set Aside Their Judgments in Civil and Criminal Cases.</u>

In addition to exercising total control over their judgments during the same term and at later terms upon a timely-filed motion, Maryland's trial courts at common law also retained general equitable power over their judgments. Thus, they could vacate them upon late-filed motions in certain circumstances, including in instances of "fraud, surprise or

---

reduce their sentences, based only upon when in the term the relevant criminal judgments were handed down. G.R.P.P. part 4, I, rule 10(c) (1951).

However, the first iteration of the rule made things more harsh for a defendant who filed a motion to reduce the sentence within what would have been the same term of court, where the court did not rule on the motion until more than 90 days after the sentence was imposed. As discussed above, at common law, the court had more than 90 days post-sentencing to rule on a motion to strike out a sentence if the motion was filed during the same term in which the sentence was imposed. The 90-day rule placed a hard stop on when a court could modify a sentence. To ameliorate *that* harshness, in 1961 this Court amended the rule to allow a court to modify a sentence within 90 days of its imposition and "thereafter, pursuant to motion filed within such period[.]" Md. Rule 764 (1961). If a defendant did not file a motion for sentence modification until after the 90-day period had run, then the court would have "revisory power and control … only in case of fraud, mistake, or irregularity." Md. Rule 764 (1961). The 1961 amendment effectively returned post-sentencing practice to what it had been at common law, with the ninetieth day after imposition of sentence substituting for the end of the term and no time limit for the court to rule on a timely filed motion.

12

mistake." *Coleman v. State*, 209 Md. 379, 388 (1956). That is, "[t]he power to set aside judgments on motion for fraud, surprise or irregularity, is a common law power incident to Courts of record; and may be exercised after the term has passed in which the judgment was rendered." *Taylor v. Sindall*, 34 Md. 38, 40 (1871); *see also Hall v. Holmes*, 30 Md. 558, 561 (1869) ("A judgment will not be set aside after the expiration of the term ... *except upon clear proof of fraud, surprise or irregularity*.") (emphasis added). Several of our criminal cases echo these principles. *See, e.g.*, *Miller*, 135 Md. at 383 (noting that a convicted defendant who requests to strike a judgment "after the expiration of the term" must prove "fraud, deceit, surprise or mistake"); *Cleary v. State*, 155 Md. 614, 617 (1928) (noting that a convicted defendant "making application to strike out a judgment after the term" must show "a sufficient ground of attack upon a judgment" and must have "acted in good faith and with ordinary diligence") (internal quotation marks and citation omitted).

Because courts could wait until later terms to act upon timely requests to vacate judgments, and because courts could entertain even later-filed requests (albeit under stricter standards that allowed only a few grounds for relief), my view is that the common law end-of-term rule should not be understood as a jurisdictional bar in Maryland. It certainly operated to "secure stability for the judgments of the courts" by ensuring that judgments were not lightly disturbed. *See Coleman*, 209 Md. at 388. However, the rule did not actually deprive courts of jurisdiction over judgments entered during earlier terms. They could vacate those judgments at later terms if either a timely request was made, or if an untimely request was made but they were satisfied that sufficient grounds had been proven. As this Court explained over a century ago, courts retained power over their past judgments as part

13

of "a general equity jurisdiction" – notwithstanding that they would only act upon requests to disturb past judgments when "the most clear and satisfactory proof" was presented, and the party invoking the court's power "acted in good faith and with proper diligence":

> As has been held in a number of cases in this State, the power to set aside judgments upon motion for fraud, deceit, surprise or irregularity in obtaining them is a common law power incident to Courts of Record. During the term at which a judgment is rendered it remains subject to the control of the Court, but *after the lapse of the term* there must be the most clear and satisfactory proof of the fraud, mistake, surprise or other ground relied on, and the party seeking such relief must appear to have acted in good faith and with proper diligence. *The Court exercises a general equity jurisdiction* and considers all the facts and circumstances of the case. When, therefore, it is sought to vacate a judgment on the ground of fraud, the Court in which it was rendered *ordinarily has as much power to entertain and act upon the application as a Court of Equity has*.

*Maryland Steel Co. of Sparrows Point v. Marney*, 91 Md. 360, 366 (1900) (emphasis added).

Cases outside of Maryland have likewise acknowledged that the common law end-of-term rule, although important and typically strictly applied, was not a jurisdictional bar to revising a judgment. That is, a trial court did not lose jurisdiction over its judgment at the end of the term; the criteria for disturbing a judgment simply became more stringent. *See, e.g.*, *Horicon v. Langlois' Estate*, 52 A.2d 888, 891 (Vt. 1947) ("A trial court has control over its own judgments during the term ..., *and afterwards, and possesses the inherent power, for sufficient reasons, to order a final judgment vacated*, ... but whether this power shall be exercised in any given instance rests solely in the sound discretion of the court.") (emphasis added); *Webb Packing Co. v. Harmon*, 193 A. 596, 598 (Del. Super. Ct. 1937) ("[I]n most cases, the power of Courts to vacate their judgments does not extend

14

beyond the term ... [but] the Courts of this State have not always adhered to that rule....

[W]here it has appeared from the record ... that the defendants have been deprived of rights given them by law, judgments have been vacated.").

Indeed, in a similar vein, some courts outside of Maryland have held that parties can affirmatively waive the common law end-of-term rule. *See, e.g.*, *Humphreyville v. Culver, Page, Hoyne & Co.*, 73 Ill. 485, 487 (Ill. 1874) ("It is urged that the court below had no power, at a subsequent term, to set aside a judgment of the previous term.... [B]ut we presume no one would contest the proposition, that the court may, with the consent of both parties[.]"); *Slattery v. Uvalde Rock Asphalt Co.*, 140 S.W.2d 987, 992 (Tex. Civ. App. 1940) ("[O]n agreement of the parties, the court, at a subsequent term, may vacate a judgment and reinstate the cause on its docket as a pending action."); *Kidd v. McMillan*, 21 Ala. 325, 327 (Ala. 1852) (holding that a court is not *required* to "set aside a final judgment, at a term subsequent to its rendition, and re-try the cause" even "when the parties consent" to such relief, but also stating that, if a court does decide to set a judgment aside in a subsequent term based on the parties' consent, "we will not hold that the court acted without authority or jurisdiction"). Of course, if a limitation like the common law end-of-term rule can be waived, it cannot be jurisdictional. *See Mayor and City Council of Frostburg v. Tiddy*, 63 Md. 514, 517 (1885) ("An agreement may waive a right, but cannot confer jurisdiction on a court[.]").[5]

---

[5] To be sure, there are also state court decisions concluding that the common law rule could not be waived, *see, e.g.*, *City of Little Rock v. Bullock*, 6 Ark. 282, 283 (Ark. 1845), but it does not appear that a Maryland court has ever specifically addressed the issue

Thus, although I agree with the Majority that a court's jurisdiction over its own judgments is founded upon background common law in Maryland, my view of that jurisdiction and of the effect of Rule 4-345(e) differs. Even if Rule 4-345(e) were repealed, it appears that the common law in Maryland would continue to provide sufficient foundation to entertain motions to modify judgments filed in the same term, even if those timely motions were held under advisement for several terms before being decided. Additionally, even if a motion to modify a judgment were filed after the end of the term, the common law would continue to provide the courts general power over their judgments. Of course, courts applying the common law would necessarily apply strict standards, and they would exercise their power to disturb a judgment only in narrow circumstances. But regardless of whether those circumstances are expanded or contracted by rule (or affected by principles of waiver as well), courts in Maryland would still have a baseline common law jurisdiction over their own judgments at least for several terms, if not indefinitely.[6]

Accordingly, I am unable to distinguish this case from *Rosales*. To the extent a motion is timely filed, the five-year deadline in Rule 4-345(e) does not add anything to the common law. At common law, a motion filed in the same term as the judgment would

---

of waiver in this context. I find more persuasive the reasoning in cases like *Kidd*, 21 Ala. at 327.

[6] I have not seen a case delineating the outer bounds of this common law jurisdiction, and I do not see occasion to analyze the theoretical reach of that jurisdiction here. It is enough to say that the five-year period in Rule 4-345(e) appears to be subsumed within the "several terms" at common law that some courts waited to act upon motions to vacate judgments that were timely filed in the same term as the judgments themselves.

allow a court to exercise general control over the judgment at least for several subsequent terms and perhaps indefinitely. To the extent a motion is not timely filed, Rule 4-345(e)'s five-year deadline also does not alter *jurisdiction*. At common law, our courts could consider later-filed motions as well; even if they typically would reject those motions for insufficient proof of the applicable common-law grounds to justify disturbing a judgment.

What Rule 4-345 does change is the legal standards that a court will apply in determining whether to grant a motion to modify a sentence that is filed after the end of the term. At common law, courts could revise their judgments generally if a motion was filed in the same term. And if a motion were filed later, courts could revise their judgments if grounds of fraud, surprise, or mistake were proven. Under Rule 4-345(e), a court can revise a sentence generally for a period of five years, provided a motion seeking a modification is filed within 90 days of the imposition of the sentence. After that period, or if a motion is filed later than 90 days after a sentence was imposed, a court can revise a sentence only on grounds of "fraud, mistake, or irregularity." Md. Rule 4-345(b). Although Rule 4-345 changes the applicable legal standards for a set period of time, it does not expand the common law jurisdiction of our courts over their judgments.[7]

---

[7] This is not to say that I view the five-year period in Rule 4-345(e) as anything other than mandatory. I just do not view it as jurisdictional. To that extent, I agree with Justice Watts. *See* Dissenting Op. of Watts, J., at 2 (opining that "the five-year deadline is mandatory, but not jurisdictional"). The common law standards for vacating a judgment after the end of a term, today retained in criminal cases after the five-year period in a separate subsection of the rule, *see* Md. Rule 4-345(b) ("The court has revisory power over a sentence in case of fraud, mistake, or irregularity."), are narrow and exacting. If the standards in Rule 4-345(b) are not satisfied, and absent some issue of waiver, legal right, or court order based upon more than the equities of a particular case, I would not expect a court to disturb a legal sentence after the five-year period runs. Equitable considerations

### B. The Majority's Jurisdictional Interpretation of Rule 4-345(e)'s Five-Year Limit Conflicts with This Court's Contemporary Approach.

For the reasons discussed above, I believe the Majority is incorrect to conclude that our courts, at common law, lacked jurisdiction over their judgments after the end of the term. To be sure, as the Majority points out, many historical Maryland cases used language with "jurisdictional connotations" in discussing the common law end-of-term rule, Maj. Op. at 15, 23, but that does not necessarily mean the common law rule was a "jurisdictional" bar, as we have come to understand what the term "jurisdictional" actually means. Jurisdictional language has mistakenly crept into our caselaw before, and our contemporary approach has been to clarify it as needed. *See Rosales*, 463 Md. at 565 ("Error arose when this Court began characterizing the thirty-day requirement as 'jurisdictional' after the adoption of the 1957 Code."). Moreover, as Justice Watts points out in her dissenting opinion, the Majority's jurisdictional analysis departs from our contemporary approach in other respects as well. *See* Dissenting Op. of Watts, J., at 2-4.

The Majority reasons that the Maryland Rules can have jurisdictional effect because, under article IV, section 18(a) of the Maryland Constitution, these rules "carry

---

alone cannot support an exception to the five-year period in Rule 4-345(e), regardless of whether that rule is jurisdictional. *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192-93 (2019) ("Rules in [the] mandatory camp are not susceptible of [an] equitable approach .... Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility.... [C]ourts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving.") (paragraph break omitted). Where I part ways with Justice Watts is on the question of whether the five-year deadline is a mandatory claim-processing rule. I explain why I view the five-year deadline as such a rule below.

the force of law until they are modified either by this Court or by the General Assembly." Maj. Op. at 23 & n.11. Although jurisdiction is typically a creature of statutory and constitutional law, the Majority states that a valid rule can alter courts' jurisdiction in Maryland, so long as the rule does not conflict with a statutory or constitutional provision.

The Majority then concludes that Rule 4-345(e) is one such jurisdictional rule. This is because, as the Majority interprets the common law, courts lost all jurisdiction over their judgments at the end of the term. And because the five-year limit in Rule 4-345(e) modified that result, the rule took on jurisdictional properties itself, serving as the only jurisdictional hook to modify a sentence after the end of a term. However, because article IV, section 18(a) of the Maryland Constitution refers to "rules and regulations" adopted by the Supreme Court of Maryland – and not the orders of this Court or any other court – it appears that a jurisdictional rule like Rule 4-345(e) must be modified either by rule, statute, or constitutional amendment.

If this is all true, it would turn this Court's contemporary treatment of Rule 4-345(e) into error. In recent memory, on multiple occasions, we have endorsed an approach where the five-year period in Rule 4-345(e) can be extended by order when necessary. For instance, in *Schlick II*, 465 Md. at 587, we held that a postconviction court could (and did) implicitly extend a circuit court's revisory power beyond the five-year limit in Rule 4-345(e) when it granted postconviction relief to effect a defendant's legal right to effective assistance of counsel. In *Schlick II*, the five-year period for reconsideration was set to expire, regardless that the postconviction court had allowed a prisoner to file a belated motion to modify his sentence. So, we reasoned that the petitioner was also "entitled to a

19

full and fair opportunity in which to obtain ... [a] ruling on his motion[.]" *Id.* at 586. To provide that opportunity, we held that "implicit in the [postconviction] court's ruling was the circuit court's authority to exercise its revisory power ... for five years following the postconviction court's final order." *Id.* at 587. However, if the five-year period in Rule 4-345(e) were actually jurisdictional, it could not have been extended in a single case by a postconviction court's order, even to effect the important right to effective assistance of counsel.[8] At the least, an extension would have required a rule change.[9]

_____

[8] The Majority cites *Wilson v. State*, 284 Md. 664 (1979), in support of the proposition that, even "[b]efore *Rosales v. State* …, when this Court was still operating under the incorrect belief that the 30-day deadline under Rule 8-202(a) was jurisdictional, defendants were given the right to a belated appeal as a remedy under the postconviction statute for defense counsel's failure to protect a defendant's appellate rights." Maj. Op. at 12 n.2. However, *Wilson* did not involve counsel's failure to file a timely notice of appeal. Rather, the problem was that Wilson's attorney on appeal failed to provide effective assistance of counsel in preparing the briefs. *See Wilson*, 284 Md. at 667-68. Because Wilson's direct appeals had been exhausted, the remedy was to allow Wilson to pursue a new direct appeal. That did not involve "resetting the clock" to allow what was then thought to be a jurisdictional deadline to begin running again. The Majority cites no pre-*Rosales* decision that granted the right to file a belated appeal as a postconviction remedy for the failure to note a timely appeal through no fault of the defendant, in which the Court grappled with the jurisdictional implications of such an outcome.

[9] The Majority says that we "reset the clock" in *Schlick II*, which sounds more benign than saying that we extended a jurisdictional deadline. But regardless of how it is phrased, our decision in *Schlick II* purported to authorize a circuit court to rule on a motion to modify a sentence even *after* the end of the supposedly jurisdictional period set forth in Rule 4-345(e). There does not appear to be any basis in statute or the Maryland Rules for what the Majority now concludes was a one-off expansion of jurisdiction. The Majority does not, for instance, cite any provision of Maryland's adoption of the Uniform Postconviction Procedure Act that might provide for additional jurisdiction beyond Rule 4-345(e) on a case-by-case basis.

Likewise, and again as Justice Watts points out, *see* Dissenting Op. of Watts, J., at 4, recent administrative orders tolling or suspending deadlines under the Maryland Rules in response to the COVID-19 global health emergency may not have been able to alter a jurisdictional limit. Thus, the Majority's analysis casts doubt on the validity of any sentence modifications that were granted during the COVID-19 emergency *after* the applicable five-year period expired, but *within* the extended period provided by this Court's administrative orders. Under the Majority's rationale, it appears that any such modifications may have been granted without jurisdiction to do so.[10]

In my view, however, *Schlick II* and this Court's administrative orders were not erroneous attempts to expand jurisdiction without proper rulemaking. They simply acknowledged our recent view that the common law as it applies in Maryland provided courts with jurisdiction over their judgments, and that Rule 4-345(e) did not do any jurisdictional work. Although I believe that Rule 4-345(e) is mandatory and that the equitable grounds at issue here cannot justify a departure, I would nevertheless hold that the five-year limit in Rule 4-345(e) is not jurisdictional. I view it as a restriction that can

---

[10] The Majority notes that Maryland Rule 16-1003(a)(7) delegates to the Chief Justice the authority to, among other things, "suspend, toll, extend, or otherwise grant relief from time deadlines, requirements, or expirations otherwise imposed ... [and] deadlines for filing or conducting judicial proceedings[.]" I agree that this rule provides sufficient authority for the Chief Justice to suspend deadlines in mandatory claim-processing rules and time-related directives. And I suspect that most filing deadlines, timelines for conducting judicial proceedings, and time deadlines generally will fall into one of those two categories. However, because I do not see a need to reach the issue here, I would not go further to opine on the difficult question of whether Rule 16-1003(a)(7) alone provides sufficient authority for the Chief Justice to suspend a time deadline that is truly jurisdictional.

be waived or forfeited, and that can (in appropriate cases) be extended or tolled by order. In short, Rule 4-345(e) changes the common law standards that a court will apply in evaluating a motion to modify a sentence, and it even changes *when* those various standards apply, but it fundamentally does not alter the common-law jurisdiction that courts in Maryland already possess over their judgments.

## C. Rule 4-345(e) Is Properly Viewed as a Mandatory Claim-Processing Rule.

If Rule 4-345(e) is not jurisdictional, the only question that remains is what type of non-jurisdictional rule it is. I would conclude that it is a mandatory claim-processing rule.

In addition to jurisdictional deadlines, which are "rare[,]" the United States Supreme Court has identified two other types of "time limits" that govern the administration of litigation: "mandatory claim-processing rules" and "time-related directives." *McIntosh v. United States*, 601 U.S. 330, 337 (2024). Mandatory claim-processing rules "regulate the timing of motions or claims brought before the court." *Dolan v. United States*, 560 U.S. 605, 610 (2010). These deadlines generally must be enforced, and they are not subject to equitable exceptions, such as equitable tolling. *See Nutraceutical Corp.*, 586 U.S. at 192-93. Although they can be waived or forfeited, *see Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. 17, 20 (2017), otherwise, mandatory claim-processing rules are typically binding once invoked. *See McIntosh*, 601 U.S. at 337 ("If the affected party alerts the court to the deadline and invokes its protection, the relevant action cannot be taken after the deadline has passed."). Filing deadlines are "quintessential claim-processing rules." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).

22

In contrast, a time-related directive "seeks speed by creating" a deadline "that is legally enforceable but does not deprive a judge or other public official of the power to take the action ... if the deadline is missed." *Dolan*, 611 U.S. at 611. Time-related directives are thus more "flexible" than mandatory claim-processing rules. *McIntosh*, 601 U.S. at 338. Although it is important to meet the deadlines contained in time-related directives, missing such a deadline typically will not deprive a public official of the power to act. *Id*. at 342.

To determine whether a deadline is a mandatory claim-processing rule or a time-related directive, courts look to, among other things, whether the rule uses mandatory language; whether it "specif[ies] a consequence for noncompliance with its timing provisions," *Dolan*, 560 U.S. at 611 (cleaned up); and whether its broader context and purpose suggest that it should be given mandatory, unalterable effect. *See id.* at 611-12. Put another way, courts will look to the rule, its context, and its purpose to determine whether "[i]t functions as a spur to prompt action" (time-related directive), or whether it functions as "a bar to tardy completion of business" (mandatory claim-processing rule). *McIntosh*, 601 U.S. at 340 (cleaned up). Courts also look to whether a rule governs the litigants or the court; a rule that governs litigants is more likely to be a mandatory claim-processing rule, and a rule governing a court is more likely to be a time-related directive. *See id.* at 341.

Applying these principles, I would conclude that the five-year period in Rule 4-345(e) is a mandatory claim-processing rule. Although the rule governs a court's conduct, not that of litigants, that is the only mark in favor of interpreting the rule as a time-related directive. On the other side of the ledger, the rule's language speaks in such mandatory

23

terms that it has been frequently misunderstood to have independent jurisdictional effect. The rule specifies a firm consequence of exceeding the five-year limit. Specifically, it states that a court "may not" revise a sentence after five years have passed. Indeed, in so doing, it purports to limit the revisory "power" of the court over a sentence. Md. Rule 4-345(e). It also uses the same "may not" language to prevent a court from increasing a sentence after it has been imposed – something that has long been considered to violate double-jeopardy protections. *See, e.g.*, *Donaldson v. State*, 305 Md. 522, 530 (1986) ("The [double-jeopardy] clause ordinarily protects against ... an increase in the punishment imposed upon a conviction."); *Ex parte Lange*, 85 U.S. 163, 173 (1873).

Additionally, the five-year limit in Rule 4-345(e) is not designed to spur prompt action. If anything, it is designed to allow a court to wait for a limited amount of time to decide a motion to modify a sentence, to give the motion careful consideration, and to allow the movant several years to take new steps to demonstrate to the court that the motion should be granted. At the same time, however, the rule sets a date certain by which crime victims and the public can be assured that a sentence will no longer be subject to reduction. Thus, the five-year limit in Rule 4-345(e) sets a deadline that balances important competing interests, and that was intended to function as a rigid and predictable deadline.

As a constraint on the court's action, rather than a filing deadline applicable to a party, the five-year time period admittedly may not be a "quintessential" example of a claim-processing rule. But it nevertheless is designed to be mandatory. For all of these

reasons, I would conclude that the five-year deadline must be given mandatory effect when timely invoked by the State.[11]

Here, the State could have waived or forfeited the rule's application, in which case the circuit court would have had discretion, after the five-year deadline had run, to grant Mr. Thomas a hearing and, if the court saw fit after such a hearing, to modify Mr. Thomas's sentence. However, the State did not waive or forfeit application of the deadline. To the contrary, in its opposition to Mr. Thomas's supplemental motion for modification of

---

[11] For the same reasons, I do not subscribe to Justice Watts's interpretation that the rule permits limited equitable exceptions on a case-by-case basis. I agree with Justice Watts that the rule has features of both a mandatory claim-processing rule and a time-related directive. However, the restrictive language of the rule purporting to limit the "power" of the court does not lend itself to an interpretation that allows a court to unilaterally decide to make a case-specific equitable exception. Thus, although I agree that the rule is not a perfect fit for any category, I would categorize it as a mandatory claim-processing rule to give full effect to the rule's highly restrictive language. If a court, sympathetic to the equities of the circumstances, could overrule the State's objection and opt to act outside the five-year limit, then the court's "power" would not actually be limited by Rule 4-345(e).

At the same time, categorizing the rule as a mandatory-claim processing rule would not cede power to the State or undercut the mandatory nature of the rule. Even if the State waives or forfeits the benefit of the rule, the court can still enforce the rule; nothing would require the court to reach the merits of a motion to modify outside the five-year period. *See United States v. Oliver*, 878 F.3d 120, 124-25 (4th Cir. 2017) (where government has waived or forfeited application of a mandatory claim-processing rule, court still retains inherent authority to enforce the deadline on its own initiative). Thus, my interpretation of the rule is as restrictive as possible without labeling the rule as jurisdictional: a court or the State, acting alone, cannot circumvent the five-year period in Rule 4-345(e). Acting outside the five-year period would require waiver or forfeiture by the State *and* a determination by the court that it should do so.

sentence and request for hearing, the State asserted that "any revision of a sentence must occur within five years from the date the sentence was imposed."[12]

I would reverse the judgment of the Appellate Court on the ground that the State timely sought the application the mandatory five-year deadline set forth in Rule 4-345(e). Accordingly, I respectfully concur in this Court's judgment of reversal.

---

[12] The record of the circuit court proceedings in the *Schlick* case reflects that the State timely objected to the circuit court granting the motion for sentence modification on the ground that the five-year period had run. Thus, I agree with the Majority that *Schlick v. State*, 238 Md. App. 681 (2018) ("*Schlick I*"), was premised upon incorrect reasoning, but not for the reason that the Majority proffers. In my view, the Appellate Court in *Schlick I* was correct that the five-year period was not a jurisdictional bar to belated consideration of Schlick's Rule 4-345(e) motion. However, in *Schlick*, as here, the State timely invoked this mandatory claim-processing rule. Thus, the circuit court in *Schlick* would have correctly dismissed the motion, except that an extension of the five-year period was warranted because, as the postconviction court concluded, Schlick had been deprived of the right to effective assistance of counsel. An extension of the mandatory five-year period was required to fully rectify the deprivation of that legal right.

Circuit Court for Charles County
Case No.: 08-K-02-000568
Argued: February 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2023

_____

STATE OF MARYLAND

v.

STEVEN ANTHONY THOMAS

_____

Fader, C.J.
Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Concurring and Dissenting Opinion by Eaves,
J., which Hotten, J., joins.

_____

Filed: August 29, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Maryland Constitution, art. IV, § 3A, she also participated in the decision and adoption of this opinion.

I join the Majority opinion in full except as to Part II.D, from which I respectfully dissent.

I agree with the Majority's conclusion that a circuit court's jurisdiction to revise a defendant's sentence under Maryland Rule 4-345(e)(1) (the "Rule") ends "after the expiration of five years from the date the sentence originally was imposed[.]" A sentencing judge's authority to revise a sentence is indeed a unique area of the law. As the Majority correctly notes, it stems from the common law tradition that courts retained revisory power over a judgment only until the expiration of the term in which it was issued. After that point, the court no longer could revise the judgment. And because the General Assembly has not—to date—seen fit to legislate to the contrary, this Court has final say on this narrow jurisdictional aspect of a sentencing court.[1] *See* Md. Const., art. IV, §§ 20(a) (detailing the circuit courts' power, authority, and jurisdiction, to include those that it enjoyed at the time of these amendments "and the greater or lesser jurisdiction hereafter prescribed by law[]"); 18(a) (detailing this Court's rule-making authority). Therefore, the Rule's five-year time limit imposed by this Court, which is an expansion of the common law, is jurisdictional. Thus, I too would answer the State's question presented in the negative.

---

[1] If we were dealing with jurisdictional authority based in statute, created by the General Assembly, then there would be no debate that this Court would lack the authority to alter the circuit courts' authority contrary to what the General Assembly has prescribed. *See County Exec. Prince George's Cnty. v. Doe*, 300 Md. 445, 453–54 (1984) ("[T]he circuit courts in Maryland generally have jurisdiction over all causes of action except to the extent the General Assembly or the Constitution limit that jurisdiction or confer it exclusively upon another tribunal[.]"); *see also Rosales v. State*, 463 Md. 552, 564–68 (2019) (holding that the 30-day limit in Rule 8-202(a) to note an appeal to the Appellate Court of Maryland is a claim-processing rule, not a jurisdictional bar, because the General Assembly removed in 1957 the 30-day limit in Rule 8-202(a)'s statutory counterpart).

But the conclusion that the Rule's five-year limit is jurisdictional should have no bearing on whether a judge's ruling—*vel non*—on a motion filed pursuant to the Rule is an abuse of discretion, especially when historically we have characterized such determinations as an exercise in discretion, and regardless of whether there is a remedy to correct such abuses of discretion. Thus, I part ways with the Majority in its analysis and conclusion regarding Mr. Thomas's question presented. As to that question, under the Majority's approach, judges, when presented with a motion to modify a defendant's sentence, simply may sit on that motion and run out a defendant's five-year clock, after which the court is required to dismiss the motion for lack of jurisdiction. And this, the Majority says, is *not* an abuse of discretion. For the reasons discussed below, I dissent as to that holding.

# I
## THE CIRCUIT COURT ABUSED ITS DISCRETION

We consistently have described a court's decision to grant or deny a motion filed under the Rule as a discretionary act. *See Brown v. State*, 470 Md. 503, 527 (2020) ("Just because a defendant is eligible does not mean that the court must exercise its *discretion under Rule 4-345(e)* to grant a modification." (emphasis added)); *State v. Schlick*, 465 Md. 566, 585 (2019) ("*Schlick II*") ("Not only was Mr. Schlick denied the right to file a motion for modification of sentence, he was also denied *the court's exercise of discretion consistent with its revisory powers under Rule 4-345(e)*." (emphasis added)), *Holie v. State*, 404 Md. 591, 617 (2008) (recognizing and reaffirming the longstanding rule prohibiting the "appeal of a *discretionary denial* of a timely motion for modification of sentence *under*

*Maryland Rule 4–345(e)*" and that motions under the Rule are "*entirely committed to a court's discretion*" (emphases added)).  And, as Mr. Thomas rightly notes, when a court fails to exercise the discretion with which it is vested—for whatever reason—the court abuses that discretion.  *See Burnside v. State*, 459 Md. 657, 683 (2018) ("[T]he trial court failed to exercise its discretion when it declined to conduct a Rule 5–609 balancing test prior to Mr. Burnside's election to not testify.  The trial court's failure to exercise its discretion constituted an abuse of discretion."); *Univ. of Md. Med. Sys. Corp. v. Kerrigan*, 456 Md. 393, 406 (2017) (holding that, under Maryland Rule 2-327, this Court will reverse the trial court only if the trial court "*fails to exercise*, or abuses, its discretion" (emphasis added)); *101 Geneva LLC v. Wynn*, 435 Md. 233, 241 (2013) ("It is well settled that a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter." (quoting *Gunning v. State*, 347 Md. 332, 351 (1997))); *Gray v. State*, 368 Md. 529, 565 (2002) ("[O]ur cases hold that the actual failure to exercise discretion is an abuse of discretion.").

In my view, the circuit court here abused its discretion.  Mr. Thomas asked the court at least three times to schedule his timely request for a hearing on his previously filed motion and even brought to the court's attention the approaching five-year deadline.  The circuit court's decision to "note" the request but take "no action" for the entire five-year period is the circuit court's abdication of its duty to exercise its discretion—one way or the other.  Under our case law, that is a textbook example of an abuse of discretion.

Instead of that straight and narrow analysis, the Majority states that—in this context—the circuit court actually has three options: grant the motion, deny the motion, or

3

defer the motion. Maj. Op. at 27. Any one of those options, in the Majority's view, requires an exercise of discretion, and the circuit court's decision to defer a motion for the entire five-year period is tantamount to a denial that does not negatively impact the defendant. *Id.* at 26–30. In reaching this conclusion, the Majority makes several errors and is too dismissive of the negative perceptions about the Judiciary that its holding creates.

*First*, deferring a ruling on a motion for modification of sentence is *not* an exercise of discretion. It is, in fact, quite the opposite. It is the absence of exercising discretion. Indeed, the Majority admits as such: "A deferral is neither a grant nor a denial: It means that the court is neither ready to reduce the sentence nor foreclose that possibility." *Id.* at 27. But the Majority nevertheless maintains that the circuit court "expressly chose the deferral option by holding it in abeyance on the initial filing and then by noting and intentionally taking 'no action' on the supplemental filings." *Id.* at 28. By the Majority's own words, a judge who defers ruling on a pending motion under the Rule has not actually ruled on anything—they have *abstained* from ruling. The plain meaning of the Majority's words confirms this. "Defer" means to "put off," and specifically implies "putting off *to a later time*." *Defer*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) (emphasis added). Furthermore, "abeyance" is defined as "[t]emporary *inactivity*; suspension." *Abeyance*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Thus, "deferring" to rule on something or placing a matter in "abeyance" does not mean you have exercised discretion and made a decision; it means you have avoided for another day or put off that matter to a later time, *i.e.*, to exercise discretion in the *future*.

4

The Majority claims support for the proposition that deferral is an exercise of discretion from two cases: *Franklin v. State*, 470 Md. 154 (2020), and *Brown v. State*, 470 Md. 503 (2020), neither of which help its cause. In *Franklin*, we held that the indication of "no action" on a motion for modification is not the discretionary action of denying the motion. 470 Md. at 177–78. In fact, this Court in *Franklin* specifically recognized that "[b]y affirmatively asking the circuit court to hold the motion under advisement, [counsel] caused [the circuit court] to put [its] exercise of discretion *on hold*." *Id.* at 194 (emphasis added). *Franklin*, therefore, directly cuts against the Majority's argument. Maj. Op. at 28 (believing that, by selecting the "deferral option[,]" the circuit here "exercise[d its] discretion").

In *Brown*, the Court stated that "[o]nce the motion [to modify a sentence under the Rule] has been filed, the sentencing judge may act on it immediately or may *defer action on the motion for up to five years after the imposition of the original sentence*." 470 Md. at 514–15 (emphasis added). But the Majority's reading ignores the plain meaning of "defer" and "up to." I have already explained that "defer" means to decide at a later date. The words "up to" assume that a court's ability to defer eventually ends, requiring a definitive ruling. Additionally, the passage from *Brown* does not say that a judge can defer ruling "beyond five years." Thus, that sentence, stated in other terms means: "a judge may act on the motion immediately, or the judge may put off ruling on that motion until any point *before the expiration of the five-year period*."[2]

---

[2] Of course, where the court waits until five years minus a day, it would be bound to deny the motion because a grant would require the court to schedule a hearing, *see* Md.

5

Yet, despite *Franklin* and *Brown* working against its argument, the Majority would allow the failure to make a ruling on a motion filed under the Rule take the same effect as an affirmative denial, just not in name. Maj. Op. at 26–28. While the Rule allows the circuit court to defer it decision for a period of time, even years,[3] it is incumbent on the circuit court, in the interests of justice, to eventually rule on the motion before it.

*Second*, the Majority is reluctant to require sentencing judges to "convert a deferral into a formal denial at any point along the five-year timeline," instead believing that sentencing judges should be permitted to defer indefinitely until the five-year clock runs out. *Id.* at 29. This rationale defies logic. Of course the Rule imposes no explicit requirement on a sentencing judge to convert a deferral into a denial. But practically speaking, the court must make that conversion because a court has only two options (assuming there are no jurisdictional defects): grant the request for a hearing or deny the motion. That the Rule requires a ruling by a time certain does not implicitly create a third course of action for courts to take: denial via indefinite deferral. Besides, the Majority's logic cuts against its own argument. Just as the Rule explicitly does not require transforming a deferral into a denial within the five-year period, it also explicitly does not

Rule 4-345(f), which would place the matter beyond the five-year limit. Either way, the motion *requires* a definitive ruling. The quoted language from *Brown* should not be read to countenance sentencing judges turning a blind eye to motions filed by the defendants they have sentenced.

[3] There may be many reasons the circuit court or the parties would request that the decision on a Rule 4-345(e) motion be deferred. For example, a deferral could afford a convicted person the opportunity to enroll and progress through a rehabilitation program or programs.

state that the court may indefinitely disregard a defendant's motion. That is especially curious given this Court's case law describing (1) the authority that courts enjoy under the Rule as discretionary and (2) failures to exercise discretion as an abuse of discretion. What the Majority would call "forc[ing] a judge's hand . . . by judicial fiat[,]" I would call adhering to precedent. *Id.*

*Third*, the practical implications of the Majority's holding will have far-reaching consequences. Because the choice to defer ruling on a motion for modification is not—in and of itself—an exercise of discretion, I fear the Majority's holding will needlessly expend judicial resources. Consider the next defendant in Mr. Thomas's shoes: the five-year deadline is approaching, and it does not appear that the sentencing judge is keen on exercising their discretion to rule upon the pending motion (or even recalls that there is a pending motion) despite persistent efforts from a defendant or even counsel. Because abstaining from exercising discretion is a clear abuse of that discretion—according to our precedent—defendants will find themselves with one option: file a request for mandamus with this Court to order the lower court to rule on the pending motion before the expiration of the five years.[4] Time will tell whether this prediction holds true.

---

[4] Mandamus, we have said, "is an extraordinary remedy that is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them . . . which duty the party applying for the writ has a clear legal right." *Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 669–70 (2021) (quoting *Falls Road Cmty. Ass'n v. Baltimore County*, 437 Md. 115, 139 (2014)). Entitlement to mandamus requires two things: (1) "the party against whom enforcement is sought must have an imperative, 'ministerial' duty" and (2) "the party seeking enforcement of that duty must have a clear entitlement to have the duty performed." *Baltimore County v. Balt. Cnty. Fraternal Order of Police Lodge No. 4*, 439 Md. 547, 571 (2014). There is no doubt that the Rule creates a right for criminal

*Fourth*, the Majority's rationale sends the wrong message about our criminal justice system. According to the Majority, whether a circuit court denies a defendant's request for a hearing, which is unappealable, or defers until the five years elapses, the end result is the same: the defendant does not receive a modification of sentence. *Id.* at 29. But judges are public servants, and we should care about how the Judiciary is perceived by those we serve, which include the criminal defendants we sentence. Imagine asking a question and having to wait five years for an answer. In some instances, that may be acceptable. Now imagine that question pertains to your liberty. At some point, resolution—in and of itself—means more than whether that resolution is favorable. There is something to be said for finality and not constantly being kept in the dark. That finality respects not only a criminal defendant, but also the public, and equally important, a crime victim.

These matters should not be taken lightly. A modification of sentence can have life-altering consequences. I fear that the Majority opinion will create the perception that

---

defendants to have the circuit court exercise its discretion to consider modifying the defendant's original sentence. *See Schlick II*, 465 Md. at 569 ("After the imposition of sentence, a criminal defendant has the *right* to seek modification of that sentence under [the Rule]." (emphasis added)). Because "a trial court has a ministerial duty to rule upon a motion that is properly and timely presented to it for a ruling," "[m]andamus will lie to compel a trial court to entertain and pass on a motion made before it, after a reasonable time has passed after the filing of the motion[.]" 55 C.J.S. *Mandamus* § 106 (May 2024 Update) (footnotes omitted). While I recognize that mandamus is not the proper vehicle to actually *secure* a reduction in one's sentence, it certainly can lie to compel a court to definitively rule on a properly presented motion for a reduction of sentence. *Cf.* 52 Am. Jur. 2d *Mandamus* § 311 (May 2024 Update) ("[M]andamus lies to compel a court to *hear and determine* an application to vacate a judgment or sentence, or to set aside a judgment vacating a sentence, or to grant postconviction relief that is authorized by statute.") (emphasis added) (footnotes omitted)). Thus, I see no reason why criminal defendants would not be entitled to a writ of mandamus from this Court directing lower courts to issue a ruling on their pending motions for modification.

8

judges should treat these motions as a nuisance to be swept under the rug and ignored until the judge is required to dismiss the motion for lack of jurisdiction, dodging the merits altogether. Therefore, as to Part II.D. of the Majority's opinion, I respectfully dissent.

## II
## UNCORRECTABLE ERROR

I believe that Mr. Thomas's question presented should be answered in the affirmative. The circuit court in this case abused its discretion by not issuing a timely, definitive ruling on his motion for modification. Unfortunately, I realize that the unique nature of the circuit court's authority in this area leaves that abuse of discretion without recourse. Because the five-year limit is jurisdictional, there is nothing that can be done if a judge abuses their discretion and fails to rule on the motion within five years.

This pitfall requires correction either by the General Assembly or this Court in its rulemaking capacity based on recommendations from the Standing Committee on Rules of Practice and Procedure. Such a correction could be as simple as requiring that a defendant need only *request a hearing within five years* for the court to have jurisdiction. If the defendant complies, then the sentencing court retains jurisdiction until a definitive ruling is made. Any revision, of course, also could address finality concerns and instruct the sentencing judge to use reasonable efforts to schedule a hearing within five years from the date the defendant originally was sentenced, but otherwise make clear that an inability to do so, for whatever reason, does not deprive the court of jurisdiction.[5]

---

[5] Of course, if a judge is inclined to grant the motion, the Rule first requires that a hearing be set. Md. Rule 4-345(f). As the Majority notes, this involves many moving parts, especially where victims have chosen to be notified, and would require a judge to

9

# III
# CONCLUSION

I fully agree with the Majority's determination that the Rule touches upon a unique area of law that is rooted in a common law tradition, untouched by the General Assembly. The Rule, therefore, creates the contours of a defendant's right to a sentence modification and a court's authority to make that modification. I disagree, however, with the Majority's conclusion that a sentencing judge does not abuse their discretion by failing to either grant or deny a defendant's motion for modification within the Rule's five-year limit. But even if the Majority concluded otherwise, based upon the unique origin of the circuit court's jurisdiction in this case, Mr. Thomas—inequitably—still would be without proper recourse. In the Majority's words: "What the rule giveth, the rule may taketh away." *Id.* at 24. But no one suspected that the Rule would provide for a *right* that could be so easily subverted, least of all by a judge. *See Schlick II*, 465 Md. at 585–86 ("Rule 4-345(e) includes a defendant's *right* to seek meaningful redress by filing a timely motion for modification of sentence and obtaining the *meaningful exercise of a circuit court's discretion to act on that motion within the time limits prescribed by the Rule*." (emphases added)).

When a criminal defendant upholds their end of the bargain under the Rule (*i.e.*, timely files a motion within 90 days and timely requests a hearing within five years), then

---

"start the ball rolling before the last day of the five-year period." Maj. Op. at 30 n.19. I believe that it will be the rare case where hearings cannot be scheduled within five years from the date a defendant originally was sentenced because of eleventh-hour requests for a hearing.

our case law requires that judges do the same and rule on that motion and/or the request for a hearing within the Rule's five-year window. A failure to do so is a clear abuse of discretion, which unfortunately—as of today—is uncorrectable. The General Assembly or this Court, exercising its rulemaking authority, should correct that unfair result.

Justice Hotten has authorized me to state that she joins in this opinion.

Circuit Court for Charles County
Case No. 08-K-02-000568

Argued: February 5, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 15

September Term, 2023

———————————————————————

STATE OF MARYLAND

v.

STEVEN ANTHONY THOMAS

———————————————————————

Fader, C.J.
Watts
*Hotten
Booth
Biran
Gould
Eaves,

JJ.

———————————————————————

Dissenting Opinion by Watts, J.

———————————————————————

Filed: August 29, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Maryland Constitution, Art. IV, §3A, she also participated in the decision and adoption of this opinion.

Respectfully, I dissent. I would reach a different outcome than the Majority under the circumstances of this case. I would hold that a very narrow exception applies to Maryland Rule 4-345(e)(1)'s provision that a circuit court is prohibited from revising a sentence more than five years after imposition of the sentence, where the record shows that defense counsel indisputably exercised due diligence in seeking a hearing and the facts demonstrate that the trial court either did not know of the five-year deadline or did not appreciate its significance and thus did not do what Maryland Rule 4-345(e)(1) contemplates—*i.e.*, consider, before the deadline passed, whether to exercise its discretion to grant the motion, deny it, or defer it "for up to five years after the imposition of the original sentence." Maj. Op. at 27 (citation omitted). On this limited ground, I would affirm the judgment of the Appellate Court of Maryland, which reversed the judgment of the Circuit Court for Charles County and remanded the case to the circuit court with instruction for that court to decide whether to deny the motion for modification of sentence without a hearing, or to hold a hearing and then decide whether to grant or deny the motion. See Steven Anthony Thomas v. State, No. 657, Sept. Term, 2021, 2023 WL 3300896, at *7 (Md. App. Ct. May 8, 2023).

I would hold that contrary to the Appellate Court's conclusion in this case, see id., and in Schlick v. State, 238 Md. App. 681, 693-94, 194 A.3d 49, 56 (2018) ("Schlick I"), aff'd, 465 Md. 566, 214 A.3d 1139 (2019) ("Schlick II"), a trial court does not have fundamental jurisdiction to modify a sentence in a criminal case at any time. See Maj. Op. at 22. Maryland Rule 4-345(e)(1) unequivocally states that, "[u]pon a motion filed within 90 days after imposition of a sentence . . . the court has revisory power over the sentence

except that it may not revise the sentence after the expiration of five years from the date the sentence originally was imposed on the defendant[.]" In my view, the five-year deadline is mandatory, but not jurisdictional.[1] This is demonstrated, in part, by our holding in Schlick II, 465 Md. at 586-87, 214 A.3d at 1151, in which we concluded that a trial court erred in dismissing Mr. Schlick's motion for modification of sentence after he successfully obtained postconviction relief (based on ineffective assistance of counsel) and had been granted permission to file a belated motion for modification of sentence. We concluded that, when the postconviction "court granted Mr. Schlick 90 days from the date of its order to file a motion for modification of sentence, implicit in the court's ruling was the circuit court's authority to exercise it[s] revisory power over Mr. Schlick's sentence for five years following the postconviction court's final order." Id. at 587, 214 A.3d at 1151.[2] If the

_____

[1]This Court adopted the five-year deadline in 2004, after a period during which there was a series of articles in *The Washington Post* regarding cases in which Maryland trial courts had modified sentences (sometimes years after imposing the sentences) and discussing bills that had been introduced in the General Assembly that would have limited a trial court's authority to modify a sentence (for instance, to a one-year period). See Court of Appeals of Maryland, Rules Order at 4 (May 11, 2004), https://www.courts.state. md.us/sites/default/files/import/rules/rodocs/ro-rule4-345.pdf [https://perma.cc/XGL2-5RY7]; see, e.g., Christian Davenport and Maureen O'Hagan, Judges Challenged on Sentence Reductions, *The Washington Post* (Feb. 8, 2001), 2001 WLNR 13656854, https://www.washingtonpost.com/archive/local/2001/02/08/judges-challenged-on-sentence-reductions/3a85dcb8-7f28-4d38-940c-0130eae5669d/ [https://perma.cc/Q8CD-T45C]; see, e.g., H.B. 62 at 1 (Md. 2001), https://mgaleg.maryland.gov/2001rs/bills/hb/hb0062f.pdf [https://perma.cc/C9PY-RJFA].

[2]We explained that, on March 20, 2013, Mr. Schlick was granted postconviction relief in the form of authorization to file a motion for modification of sentence within 90 days of the date of the postconviction order, and we concluded that the trial court had revisory power over his sentence "for an additional five years from that date, or until March 20, 2018." Schlick II, 465 Md. at 587, 214 A.3d at 1151. We noted that "had Mr. Schlick received effective assistance of counsel, he would have had 90 days from the date of his

five-year deadline were jurisdictional in nature, the remedy that we ordered in Schlick II—

*i.e.*, resetting the clock for the five-year deadline based on a date other than the date the

sentence was originally imposed on the defendant—would not have been possible because

it would have allowed the trial court to modify Mr. Schlick's sentence where it lacked

jurisdiction to do so.[3]

---

probation revocation and final judgment of the court to file a motion for modification." Id. at 584, 214 A.3d at 1149. We explained that Mr. Schlick was denied this right due to his counsel's ineffectiveness and that the postconviction court restored the right. See id. at 584, 214 A.3d at 1149. We concluded that, to meaningfully restore Mr. Schlick's rights under Maryland Rule 4-345(e), "implicit in the postconviction court's grant of relief was the ability of the circuit court to exercise its revisory power over Mr. Schlick's motion for five years from the date of the postconviction court's order." Id. at 585, 214 A.3d at 1150.

[3]In Schlick II, 465 Md. at 578 n.4, 214 A.3d at 1145 n.4, we pointed out:

> In *Rosales*, we differentiated between a "jurisdictional" rule and a "claim processing" rule. A "jurisdictional" rule is set forth by our State's legislature through the passage of a statute. A "claim processing" rule does not involve a time limit prescribed by the legislature. For example, a court-made rule is a claim processing rule, and its purpose is "to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."

(Cleaned up). In addition, we noted that the State contended "that whether Maryland Rule 4-345(e) is a 'jurisdictional' or 'claim processing' rule is immaterial because the Rule is unconstitutional." Schlick II, 465 Md. at 578 n.4, 214 A.3d at 1145 n.4. In resolving the question of the Rule's constitutionality, we explained that we were neither expanding or disregarding the time frame set forth in Maryland Rule 4-435(e) and that, in our view, whether the Rule is properly classified as jurisdictional or claim processing was immaterial to the disposition. See id. at 578 n.4, 214 A.3d at 1145 n.4.

Although we made these observations in Schlick II, it is clear that, in ordering that the five-year period to begin on a date different from the date Mr. Schlick's sentence was originally imposed, we implicitly determined that the five-year period set forth in Maryland Rule 4-345(e) was not jurisdictional. First, we pointed out that jurisdictional rules are set by the General Assembly by the enacting of a statute. See id. at 578 n.4, 214 A.3d at 1145 n.4. Second, our comments concerning whether the Rule was jurisdictional or a claims-processing rule were made in the context of rejecting the State's contention that the Rule

In addition, in recent years, Chief Judges of this Court have issued administrative orders tolling or suspending deadlines under statutes or Maryland Rules, effective March 16, 2020, for the number of days that courts were closed to the public due to the COVID-19 emergency. See, e.g., Court of Appeals of Maryland, <u>Administrative Order on Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters</u> (Apr. 3, 2020), https://mdcourts.gov/sites/default/files/admin-orders-archive/archivedin2022/20200403emergencytollingorsuspensionofstatutesoflimitationsetc.pdf [https://perma.cc/WR5U-8J8K]. These administrative orders temporarily paused the countdown clock in every case in which the five-year deadline under Maryland Rule 4-345(e)(1) had not yet passed as of March 16, 2020.

What can be gleaned from this is that the five-year deadline set forth in Maryland Rule 4-345(e)(1) is mandatory but has been subject to limited exceptions that have been applied where there has been a need to make a defendant whole by making up for time that was lost through no fault of the defendant's—for instance, due to the COVID-19 emergency or due to ineffective assistance of counsel, as was the case in <u>Schlick II</u>, 465

was unconstitutional. See <u>id.</u> at 578 n.4, 214 A.2d at 1145 n.4. Although we explained that it was not material to our analysis that we classify the Rule as either, the fact remains that, under the plain language of Maryland Rule 4-345(e)(1), the Court may not revise a sentence "after the expiration of five years from the date the sentence originally was imposed on the defendant." And, although Mr. Schlick's case arose in the postconviction context, the Uniform Postconviction Procedure Act provides no basis on which this Court could supersede a jurisdictional requirement set forth by statute, or Rule for that matter. If the circuit court's jurisdiction had been grounded in the language of the Rule, there would be no authority under the Uniform Postconviction Procedure Act to order that the five-year period begin on a different date, as we did in <u>Schlick II</u>, absent an amendment to the Rule.

Md. at 586-87, 214 A.3d at 1151.  In my view, Maryland Rule 4-345(e)(1) has characteristics of both a mandatory claim-processing rule and a time-related directive but cannot be accurately labeled as either one.  As Justice Biran points out in his concurring opinion, in <u>McIntosh v. United States</u>, 601 U.S. 330, 337 (2024), the Supreme Court stated that it "has identified three types of time limits: (1) jurisdictional deadlines; (2) mandatory claim-processing rules; and (3) time-related directives."  (Citation omitted).  Concurring Opinion Op. at 22 (Biran, J., concurring).  A time bar is treated as jurisdictional "only if Congress has clearly stated that it is" and is not jurisdictional where "it does not expressly refer to subject-matter jurisdiction or speak in jurisdictional terms."  <u>Musacchio v. United States</u>, 577 U.S. 237, 246 (2016) (cleaned up).  If a court misses a jurisdictional deadline, then "it is completely powerless to take any relevant action, and the parties cannot waive the deadline."  <u>McIntosh</u>, 601 U.S. at 337 (cleaned up).  Stated otherwise, "noncompliance with a jurisdictional deadline cannot be excused."  <u>Id.</u>

"Mandatory claim-processing rules regulate the timing of motions or claims brought before the court[,]" and "generally speaking, filing deadlines are the quintessential claim-processing rules."  <u>Id.</u> (cleaned up).  The Supreme Court has stated that, "[i]f the affected party alerts the court to the deadline and invokes its protection, the relevant action cannot be taken after the deadline has passed."  <u>Id.</u>  And, "noncompliance with a mandatory claim-processing rule is presumed to be prejudicial[.]"  <u>Id.</u> at 338 (citation omitted).  Mandatory claims-processing rules, though, are subject to waiver and forfeiture by a litigant.  <u>See id.</u> at 337.  Time-related directives "seek speed by directing a judge or other public official to act by a certain time."  <u>Id.</u> (cleaned up).  Missing a deadline set forth by a time-related

directive "does not deprive the official of the power to take the action to which the deadline applies." Id. at 338 (cleaned up). And, "the failure to follow a time-related directive is . . . subject to harmless-error principles on appellate review[.]" Id. (cleaned up).

Maryland Rule 4-345(e)(1) has features of both a mandatory claims-processing rule and a time-related directive. The Rule is like a mandatory claims-processing rule in that it regulates the timing of motions brought before the court and requires that a motion for modification be filed within 90 days after imposition of a sentence. In other words, like a mandatory claims-processing rule, the Rule sets forth a deadline for the filing of a motion for modification of sentence. The Rule is like a time-related directive in that it also directs a court to act by a certain time, i.e., the court may not revise a sentence after the expiration of five years from the date the sentence was originally imposed on the defendant.

In Nutraceutical Corp. v. Lambert, 586 U.S. 188, 192 (2019), the Supreme Court stated that, where a claim-processing rule is mandatory, i.e., "unalterable if properly raised by an opposing party[,]" then the rule is "not susceptible" to an equitable approach. (Cleaned up). This principle would not apply to Maryland Rule 4-345(e)(1). The Rule does not lend itself to the principle or concept that a prosecutor can waive or invoke the Rule and this Court has never held as much. Nor does the language of the Rule contain or lend itself to a reading of such a concept into the Rule. Maryland Rule 4-345(e)(1) speaks for itself. Our case law has stated that the Rule is mandatory, but it is a time limit on the court, not a time limit for a party to do something that could be excused or forfeited by the opposing party. In Nutraceutical Corp., 586 U.S. at 189-91, the Supreme Court held that a Court of Appeals may not forgive on equitable tolling grounds a failure to adhere to a

- 6 -

deadline set forth in Federal Rule of Civil Procedure 23(f)—which authorized Courts of Appeals to permit an appeal from an order granting or denying class-action certification if a petition for permission to appeal is filed within 14 days after the order is entered—where the opposing party objects that the appeal was untimely. The Supreme Court classified the time limit as a nonjurisdictional claim-processing rule that could be waived or forfeited by an opposing party but is mandatory if properly raised by the opposing party. See id. at 192. The Supreme Court's discussion in Nutraceutical Corp. demonstrates that issues concerning the waiver or forfeiture of mandatory claims-processing rules are issues between the parties, where the opposing party can either raise or waive the issue.

By contrast, Maryland Rule 4-345(e)(1) imposes an obligation on a trial court and not a time limit for a party to take action, which the other party can waive or forfeit or otherwise raise as an issue. The Rule sets forth a mandatory time period for a trial court to act on a motion for modification of sentence (five years) and there is no need for the State to invoke its application for the Rule to have mandatory effect. To conclude that the five-year time period applies only where the State invokes application of the Rule and that the State can waive or forfeit its application would mean that the time period is not mandatory after all and would cede application of the Rule to the State. Maryland Rule 4-345(e)(1) is neither jurisdictional nor a traditional mandatory claim-processing rule that sets forth time limits for a party to act, *e.g.*, as in Nutraceutical Corp. Although the Rule is not geared toward speed of action, it is a Rule that, like a time-related directive, directs a judge to act by a certain time and, as such, it is a Rule to which this Court has the authority to permit equitable exceptions. And, in Schlick II and the administrative orders issued during the

COVID-19 crisis, this Court and the Chief Judge did just that. In both instances, for different reasons, limited equitable exceptions to the five-year requirement of Maryland Rule 4-345(e)(1) were applied.

The exception that I would apply in this case is equally narrow and grounded in the need to make a defendant whole where through no fault of the defendant's a trial court did not exercise its discretion within the five-year period. The exception would not apply merely because a trial court does not expressly grant or deny a motion for modification of sentence before the five-year deadline passes. I would hold that an exception applies in cases like this one, where there is a need to make a defendant whole because defense counsel exercised due diligence in trying to secure a hearing and the record demonstrates that the trial court either did not know of the five-year deadline or did not consider, before the deadline passed, whether to grant, deny, or defer the motion past the deadline.

In this case, Mr. Thomas was resentenced on December 3, 2014, and the five-year deadline expired on December 3, 2019. Prior to the deadline, on February 9, 2015, Mr. Thomas's counsel timely filed a motion for modification of sentence, and the circuit court issued an order dated June 5, 2015, stating that the motion for modification of sentence would be held in abeyance. After that—well before the five-year deadline passed—Mr. Thomas's counsel exercised due diligence by filing three supplemental motions for modification of sentence with requests for a hearing before the expiration of the five-year deadline on: September 7, 2017, September 21, 2018, and August 9, 2019.

On September 29, 2017, October 18, 2018, and December 6, 2019, the circuit court stamped the first page of the supplemental motions for modification of sentence with the

notation "NOTED.  NO ACTION[,]" and the circuit court judge's handwritten initials accompanied each notation.

On December 6, 2019, when the circuit court marked the third supplemental motion for modification "NOTED.  NO ACTION" with the circuit court judge's initials affixed, the five-year deadline had already passed.  The circuit court made no mention of the deadline having passed and treated the third supplemental motion for modification of sentence in the same manner as it did the earlier ones, before the deadline passed.

After the five-year deadline passed, on January 8, 2021, Mr. Thomas filed a fourth supplemental motion for modification of sentence, this time on his own behalf, and on January 26, 2021, the circuit court scheduled a hearing.  In an opposition to the motion, and at the hearing, the State contended that the circuit court lacked the authority to grant the motion because the five-year deadline had passed.  At the conclusion of a brief hearing—which consisted primarily of the parties discussing Schlick I and disputing whether that case's holding with respect to the fundamental jurisdiction of the trial court was  applicable or distinguishable—the circuit court ruled that it did "not have authority to . . . modify the sentence on this date" and denied the motion.

Under these circumstances, it is evident that the circuit court was either unaware of the significance of the five-year deadline or unaware that the deadline had passed until the State brought it to the circuit court's attention in response to the court having scheduled a hearing after the deadline had passed.  By setting the motion in for a hearing after the five-year deadline, the circuit court demonstrated that it believed that it had the authority to consider the motion for modification of sentence after the deadline.  The circuit court would

not have scheduled a hearing if it thought at the time that it lacked the authority to grant the motion, as it ultimately concluded. If the circuit court knew of the deadline and believed in advance that it could not entertain the motion, scheduling a hearing would have been pointless. The record contains no indication that the circuit court was knowingly trying to do something that Maryland Rule 4-345(e)(1) does not provide for—*i.e.*, scheduling a hearing after the five-year deadline had passed due to special circumstances in the case.[4] The act of setting the motion in for a hearing after the deadline shows the circuit court's lack of awareness of the five-year deadline or lack of awareness of its significance, *i.e.*, its mandatory nature, and gives rise to the inference that the circuit court did not consider the motion, before the deadline passed, and exercise the discretion to grant it, deny it, or defer it and permit the deadline to pass.[5]

---

[4]In this case, the State pointed out at the June 16, 2021 hearing on the motion for modification of sentence that the five-year deadline passed before the COVID-19 emergency began. There is no indication in the record that, when scheduling the hearing, the circuit court mistakenly believed that this case was impacted by the suspending or tolling of deadlines due to the COVID-19 emergency.

[5]In concluding that the trial court properly exercised its discretion in reviewing Mr. Thomas's motion for modification of sentence and supplemental motions, the Majority states that "we have no difficulty crediting Judge Greer with the presumption that he understood the significance and mandatory nature of Rule 4-345(e)." Maj. Op. at 29 n.17. The Majority makes this determination based on the premise that "courts are presumed to understand and properly apply the law." Maj. Op. at 29 n.17 (citation omitted). In my view, the Majority conflates the presumption that judges are presumed to know the law with the premise that there is a presumption that judges always know each and every date in each and every case assigned to them. As an alternative theory, the Majority speculates about the trial judge's thought processes—*e.g.*, "we presume he was aware of the deadline[,]" "[s]o perhaps Judge Greer read and was moved by" the supplement, etc.—and concludes that the trial judge was aware of the five-year deadline and was not persuaded to hold a hearing within the deadline. Maj. Op. at 29 n.17. Neither the principle that a judge is presumed to know the law nor the Majority's speculation about the reason that the

To be sure, in both the second and third supplemental motions for modification of sentence, Mr. Thomas's counsel advised the circuit court that it would have the authority to rule on the motions only until December 2019. Nonetheless, the circuit court scheduled a hearing after Mr. Thomas filed the fourth supplemental motion for modification of sentence on January 26, 2021. This demonstrates that the circuit court was of the belief that it could still consider the motion, notwithstanding Mr. Thomas's counsel's earlier advisements.

Without more, the circumstance that the circuit court added the notation "NOTED. NO ACTION" to the third supplemental motion for modification of sentence on December 6, 2019, three days after the five-year deadline had passed, would not alone lead to the conclusion that the circuit court did not know of the deadline or appreciate its significance and properly exercise its discretion by deferring the motion. A circuit court's decision to take "NO ACTION" on a motion for modification of sentence does not mean that the circuit court has failed to consider the motion. It is possible that a notation of "no action" on a motion for modification of sentence may signify that the trial court is deferring consideration of whether to deny the motion or to hold a hearing and consider whether to deny or grant the motion. See Franklin v. State, 470 Md. 154, 178, 235 A.3d 1, 15 (2020). At the same time, it is equally possible that a trial court "may hold a motion in abeyance but have already reviewed the motion and come to a conclusion that a hearing would not

_____

trial judge in this case scheduled a hearing after the expiration of the five-year period negates the obvious conclusion that the judge was unaware of when the five-year deadline actually expired.

- 11 -

likely be granted, *i.e.*, the motion will be denied." See id. at 201-02, 235 A.3d at 28 (Watts, J., concurring).

A deferral of a motion past the five-year deadline can be the equivalent of the denial of the motion for modification of sentence without a hearing. In this case, I would not be in favor of affirming the Appellate Court's judgment if the deferral of the motion past the five-year deadline was the only circumstance asserted in favor of concluding that the circuit court had not considered the motion before the deadline passed. My position is based largely on the circuit court having scheduled a hearing on the motion after the five-year deadline had passed, and the record demonstrating that upon being advised of the deadline in an opposition to the motion and at the hearing, the circuit court readily agreed that it could not act on the motion. Under these circumstances, in my view, it is not possible to conclude that the circuit court properly exercised its discretion in deferring the motion beyond the five-year deadline.

In the interest of justice, I would conclude that relief is warranted where defense counsel exercised due diligence in filing a motion for modification of sentence and multiple supplements requesting a hearing and the record demonstrates that the circuit court either did not know when the five-year deadline was or did not appreciate its significance, and, as a result, it cannot be determined that the court exercised its discretion, before the deadline passed, to consider whether to grant the motion, deny it, or conduct a hearing. I would affirm the judgment of the Appellate Court, on this very narrow exception to the five-year limitation under Maryland Rule 4-345(e)(1), and remand the case with the instruction that, within 30 days of the date of this opinion, the circuit court decide whether

- 12 -

to deny the motion without a hearing or conduct a hearing and then decide whether to grant or deny the motion. The point of a remand in this case would not be to restart the countdown clock for the five-year deadline (as we did in Schlick II, 465 Md. at 587, 214 A.3d at 1151) to allow for another five-year period for Mr. Thomas to gather evidence of his rehabilitation. The purpose of a remand would be to make Mr. Thomas whole by having the circuit court consider whether to exercise its discretion to deny the motion or conduct a hearing and, if the circuit court conducts a hearing, exercise its discretion to deny or grant the motion.

For the above reasons, respectfully, I dissent.